Filed 6/23/14  Marriage of Hiramanek CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re Marriage of KAMAL and ADIL HIRAMANEK. | H036471 (Santa Clara County Super. Ct. No. 1-09-FL149682) |
| KAMAL HIRAMANEK, Respondent, v. ADIL HIRAMANEK, Appellant; RODA HIRAMANEK, Respondent. | |
| In re Marriage of KAMAL and ADIL HIRAMANEK. | H036723 (Santa Clara County Super. Ct. No. 1-09-FL149682) |
| KAMAL HIRAMANEK, Respondent, v. ADIL HIRAMANEK, Appellant. | |

In this consolidated appeal,[1] Adil Hiramanek, proceeding in propria persona, contends the trial court committed numerous errors in connection with dissolving his marriage to respondent Kamal Hiramanek.[2] These appeals are two in a series of appeals and writ petitions filed in this court since 2009 by Adil in the dissolution of marriage action.[3] Here, Adil challenges (1) an order denying his motion to set aside a postnuptial agreement; (2) four orders awarding sanctions against him for uncooperative litigation conduct; (3) a temporary custody order; (4) a domestic violence restraining order against him; (5) a judgment denying his request for reimbursement for Kamal's use of the family residence and cancelling two deeds of trust on the residence; and (6) a postjudgment order awarding sanctions against him and denying his request for an award of attorney fees, costs, and sanctions against Kamal. We conclude the court did not commit any prejudicial errors and will affirm.

## I. BACKGROUND

Our review in this case has been severely impeded by multiple deficiencies in Adil's briefs, which border on incomprehensible at times. Rule 8.204(a)(2)(C) of the California Rules of Court requires the appellant to "[p]rovide a summary of the significant facts limited to matters in the record." While Adil sets forth facts with respect to most (though not all) of the issues he raises, he presents no intelligible narrative. Instead, his factual presentations consist of lists of dates followed by either record

---

[1] We consolidated the appeals in H036723 and H036471 for purposes of oral argument and decision.

[2] "As is customary in family law cases, we refer to the parties by their first names for purposes of clarity and not out of disrespect." (*Kuehn v. Kuehn* (2000) 85 Cal.App.4th 824, 828, fn. 2.)

[3] On June 2, 2010, the family court issued an order declaring Adil a vexatious litigant under Code of Civil Procedure section 391.7. We affirmed that order in a nonpublished opinion on August 23, 2012. (*In re Marriage of Hiramanek* (Aug. 23, 2012, H035887) 2012 WL 3608515 [nonpub. opn.].)

excerpts or shorthand descriptions of events that are, at best, hard to follow.[4] He fails even to describe the nature of the underlying litigation, identify the parties and other relevant players, or explain their relationships to one another. This approach has caused us great difficulty in accurately stating the facts.

In lieu of providing the requisite factual summary of certain issues, Adil requests that we take judicial notice of briefs filed in other appeals. Specifically, he requests judicial notice of his opening briefs in case Nos. H036723 and H038045 and his mother Roda's opening brief in case No. H037203.[5] Because we are considering case Nos. H036471 and H036723 together, we will consider Adil's opening brief in case No. H036723 without taking judicial notice of it, and we therefore deny the request to do so. As of the date of this writing, no opening brief has been filed in case No. H038045; we therefore deny the request with respect to that brief. We also deny Adil's request to take judicial notice of Roda's opening brief in case No. H037203, as that request fails to comply with the requirements of rule 8.252(a) of the California Rules of Court. In particular, Adil failed to file "a separate motion with a proposed order" (Cal. Rules of Court, rule 8.252(a)(1)) or explain "[w]hy the matter to be noticed is relevant to the appeal."[6] (*Id*., rule 8.252(a)(2)(A).)

---

[4] By way of example, the entire factual background Adil provides in connection with his challenges to the denial of his motion to set aside a postnuptial agreement and three sanction awards is as follows: "MR. HIRAMANEK: *Your Honor*, *can I also request all these purchase offer not be redacted?* [¶] THE COURT: . . . *Obviously* you don't have to sign something you can't understand *. . .* You don't have to sign something that is redacted if you don't want to sign. *. . .*' " (*Sic*.) (Italics and underscore in original.) Out of context, that exchange is meaningless.

[5] Roda Hiramanek is Adil's mother. She was joined as a party to the dissolution action on September 14, 2010, and has filed a respondent's brief in case No. H036471.

[6] We deny Roda's request to take judicial notice of her opening brief in case No. H037203 for the same reason.

3

Kamal's respondent's brief provides little assistance with regard to the relevant facts, as--on the few occasions she refers to matters in the record--she fails to support those references "by a citation to the volume and page number of the record where the matter appears." (Cal. Rules of Court, rule 8.204(a)(1)(C).)[7]

Despite these difficulties, we have done our best to summarize the relevant facts based on the records in the appeals currently under consideration, as well as the records in several other appeals arising out of the underlying dissolution action (case Nos. H034904, H035020, H035887, H037203 & H037326), of which we have taken judicial notice. We also draw, at times, on one of our earlier unpublished opinions in this case. (See *Hiramanek v. Hiramanek* (July 27, 2011, H035695) 2011 WL 3208657 [nonpub. opn.].)

### A. *First Petition for Dissolution of Marriage and Postnuptial Agreement*

Kamal first petitioned for dissolution of her marriage to Adil in 2007. Litigation ensued among Kamal, Adil, and their mothers, Perviz Kapadia and Roda. Kamal and Adil reconciled in 2008. In a stipulation and order filed in family court on July 15, 2008 (the 2008 postnuptial agreement), Kamal, Adil, Perviz, and Roda agreed to dismiss their pending actions. The agreement provided that the family home on Sapa Court in San Jose (the Sapa Court property) was to be titled in the names of Kamal and Adil, with Adil owning 71 percent of the property and Kamal owning 29 percent. Adil's mother Roda waived any rights to the Sapa Court property (which previously was titled in her and Kamal's names) and agreed to have her name removed from title, tax, insurance, and utility records.

---

[7] We decline Adil's request to strike Kamal's brief and impose sanction because of this shortcoming. (Cal. Rules of Court, rule 8.204(e)(2)(C).) We simply disregard contentions unsupported by proper page cites to the record.

### B. *Underlying Petition for Dissolution of Marriage*

In March 2009, Kamal filed a second petition for dissolution of marriage. The family court issued a summons which, as required by Family Code section 2040, subdivision (a), included an automatic temporary restraining order.[8] The automatic temporary restraining order enjoined the parties from, among other things, "transferring, encumbering, hypothecating, concealing, or in any way disposing of any property, real or personal, whether community, quasi-community, or separate, without the written consent of the other party or an order of the court, except in the usual course of business or for the necessities of life."

Adil moved out of the Sapa Court property on March 3, 2009. Kamal, the parties' three children, Roda, and Perviz continued to live in the home.

The parties entered into a civil restraining order in June 2009. Among other things, that order required Kamal and Adil to "stay away" from one another, as well as from the other's residence, place of employment, and vehicle. The order defined "stay away" as "not to be in [the] line of sight," and provided that if either party "inadvertently comes in [the] line of sight of the [other], he or she shall immediately remove himself or herself from the line of sight."

On June 18, 2009, the court ordered that the Sapa Court property be listed and sold.

### C. *Section 271 Sanctions Ordered in September 2009*

Early in the second dissolution action, Adil moved to have the 2008 postnuptial agreement set aside. On September 10, 2009, the court denied Adil's motion, finding it to be "completely without legal or factual merit." In light of that finding, the court awarded $9,900 in sanctions against Adil under section 271.

---

[8] All further statutory references are to the Family Code unless otherwise stated.

On September 15, 2009, the court awarded another $1,350 in section 271 sanctions against Adil for abuse of the discovery process. That ruling was based on the court's finding that Adil's motion to quash a deposition subpoena was not made in good faith, as the motion lacked a legal basis and appeared to be designed to "obfuscate and try to bury the other side in paperwork."

Also on September 15, 2009, the court awarded $2,942.50 in section 271 sanctions against Adil for failing to cooperate with prior court orders requiring that the Sapa Court property be listed for sale.

### D. *Division of Personal Property Order*, *Adil's Unsuccessful Motion for Reconsideration*, *and Related Attorney Fees Order*

Following a two-day trial, the trial court issued an order dividing Kamal and Adil's personal property on September 25, 2009. Adil moved for reconsideration of that order, arguing that newly discovered evidence proved that the order erroneously treated separate property belonging to his mother, Roda, as community property subject to division. Following a November 20, 2009 hearing, the trial court denied the motion, concluding the evidence at issue was previously available. The court ordered Adil to pay $1,000 in attorney fees to Kamal.

### E. *October 18, 2010 Restraining Order*

The stipulated civil restraining order the parties agreed to in June 2009 expired on June 22, 2010. On June 24, 2010, Adil's attorney informed Kamal's attorney by e-mail that Adil intended to enter the Sapa Court property to assist his mother, Roda. That e-mail prompted Kamal to request a domestic violence restraining order against Adil on June 25, 2010.

The court conducted a trial on Kamal's request on September 13 and October 18, 2010. At trial, Kamal testified that the e-mail scared her because Adil had abused her and their children in the past. Kamal also testified that on February 4, 2010, she drove up to the Sapa Court property and Adil was parked next to the home. In a declaration filed

6

with the court, Adil and Roda denied that Adil was parked outside the Sapa Court property on February 4, 2010.

On October 18, 2010, the court granted Kamal's request for a restraining order based on the February 4 incident. Crediting Kamal's testimony, the court concluded that Adil had violated the civil restraining order in place at the time of the incident. The court further concluded that the incident constituted harassment and disturbing the peace of Kamal.

Adil's motion for a new trial on the restraining order issue was denied in an order filed on December 28, 2010. The October 18 restraining order expired by its own terms on October 18, 2011.

### F.    Fall 2010 Trial

On October 18 and November 29, 2010, the court held a two-day trial regarding (1) dissolution of the parties' marriage, (2) Adil's request for reimbursement for Kamal's postseparation use of the Sapa Court property, (3) Kamal's request to set aside two deeds of trust on the Sapa Court property, and (4) the parties' requests for attorney fees.

#### 1.    Evidence Adduced as to Adil's Request for Watts Reimbursement

Adil requested reimbursement for Kamal's postseparation use of the Sapa Court property beginning on March 3, 2009, the date he moved out of the home. Such compensation "is commonly referred to as a '*Watts* charge.' " (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 978, citing *In re Marriage of Watts* (1985) 171 Cal.App.3d 366, 374 (*Watts*).)

Michael Frangadakis, real estate appraisal expert, testified for Kamal that the fair market rental value of the Sapa Court property was zero with a third party--Roda--living there. Frangadakis explained that he considered a property with an existing occupant to be "nonrentable" because potential renters would be required to share facilities with the occupant. Frangadakis opined that, without Roda as an occupant, the home's fair market rental value was approximately $2,500 per month. The court excluded Adil's expert's

testimony because Adil had neither disclosed the expert nor provided an expert report.

### 2.    *Adil Decides To Represent Himself and Moves for Attorney Fees*

At the beginning of the second day of trial, the court granted Adil's request to represent himself for the remainder of the trial. Immediately after dismissing his counsel, Adil moved the court to award him attorney fees under section 2030 so that he could hire a different lawyer. The court denied the request as untimely and based on its prior determination that Adil had the financial resources necessary to hire an attorney. The trial proceeded with Adil representing himself.

### 3.    *Evidence Adduced as to the Deeds of Trust*

As noted above, the 2008 postnuptial agreement called for the Sapa Court property to be titled in Kamal and Adil's names. The agreement further provided that Kamal and Adil owned the property mortgage-free. At trial, Kamal testified that, consistent with the 2008 postnuptial agreement, she and Adil recorded a deed putting the Sapa Court property in their names on July 15, 2008.

Kamal testified that she first learned about two deeds of trust encumbering the Sapa Court property during the course of the second dissolution action. The deeds purportedly were signed on July 15, 2008--the very day Kamal and Adil recorded the deed. The first deed of trust was executed by Adil in favor of his mother Roda; it purportedly secured a promissory note in the amount of $857,009.54 and was witnessed by John McCullouch. The second deed of trust was executed by Adil in favor of his sister, Dinaz H. Bhote; it purportedly secured a promissory note in the amount of $562,885.34 and was witnessed by Tim Schneider. The deeds of trust were notarized and recorded over a year later in November 2009.

Adil filed a declaration in support of a request for attorney fees in May 2009 in which he did not declare the 2008 deeds of trust as encumbering the Sapa Court property. On October 10, 2009, Adil filed a schedule of assets and debts in which he failed to list the 2008 deeds of trust among his debts.

8

Neither of the purported witnesses to the 2008 execution of the deeds of trust, nor Adil's sister, Dinaz, testified at trial. Roda testified, but her testimony regarding the deed of trust was vague. She testified that she had loaned Adil a sum of money, but she could not say when, how much, or whether the loan was secured by a deed of trust except in response to leading questions. The court ended Adil's redirect of Roda because he repeatedly led the witness despite the court's admonishments against leading questions.

### 4. *December 6, 2010 Rulings*

On December 6, 2010, the court rendered an oral decision as to Adil's request for *Watts* reimbursement and Kamal's motion to invalidate the two deeds of trust.

With respect to Adil's request for *Watts* reimbursement, the court credited Frangadakis's testimony and determined the fair market rental value of the Sapa Court property to be zero for the period March 3, 2009, to November 30, 2010. Accordingly, the trial court denied Adil's reimbursement request as to that time period and reserved jurisdiction to decide future *Watts* claims.

The trial court granted Kamal's request to set aside the deeds of trust on two grounds. First, the court held the deeds of trust violated section 2040 because they were recorded after the March 13, 2009, effective date of the automatic temporary restraining order. The court found Adil's account--that he executed the deeds of trust in secret on the very day the stipulation providing that he and Kamal owned the Sapa Court property mortgage-free was filed--to be "simply unbelievable." The court concluded that the deeds of trust were "phony" and "designed by [Adil] to cloud title and delay resolution of the divorce proceeding." Second, the court concluded that the deeds of trust were fraudulent under the Uniform Fraudulent Transfer Act, Civil Code section 3439.

### 5. *February 14, 2011 Attorney Fees and Sanctions Order*

The court issued a written order regarding the parties' requests for attorney fees

9

and costs, which they agreed in open court would be decided on the briefs.[9]

The court awarded Kamal $100,000 in attorney fees as a sanction under section 271, concluding that Adil's vexatious litigation tactics--including numerous "persistent, repetitive, and unreasonable attempts to" relitigate issues--caused her to incur additional attorney fees in that amount. The court noted that while Kamal had cited section 2030 in support of her request for fees and costs, her brief focused on Adil's allegedly sanctionable conduct and thus was more properly addressed under section 271.

The court denied all of Adil's requests for fees and costs. Specifically, the court refused to award Adil attorney fees under section 2030, finding his claims regarding Kamal's assets to be unsupported by admissible evidence and his assertions as to his own finances to be incredible. Moreover, pursuant to section 2032, subdivision (b), the court concluded it would not be just and reasonable to award fees to Adil based on (1) Adil's capacity to find a full-time, higher-paying job; (2) Adil's history of domestic violence; and (3) the significant hardship to Kamal of requiring her to finance a vexatious litigant's "scorched-earth approach to this family law case."

The court also denied Adil's request for section 3027.1 sanctions against Kamal for knowingly making a false accusation of child abuse because Adil had failed to identify any specific allegedly false accusations. Adil's request for financial compensation under section 3028 likewise was denied on the ground that he failed to show that Kamal had thwarted his visitation rights. Adil's request for section 271 sanctions against Kamal also was denied.

### G. *Interlocutory Judgment of Dissolution and Notices of Appeal*

The court entered judgment of dissolution, as well as judgment to its December 6,

---

[9] At a July 14, 2010 hearing, the trial court specifically asked the parties' counsel: "So with regard to the proposal to submit the issue of attorney fees on declarations and in accordance with the briefing schedule[] outlined . . . , both parties are in agreement?" Counsel for both parties responded "Yes."

10

2010 *Watts* reimbursement and deeds of trust rulings, on March 10, 2011. Adil filed a notice of appeal on January 10, 2011. That notice of appeal was premature as to the March 10, 2011 judgment. However, pursuant to rule 8.104(d)(2) of the California Rules of Court, we treat the notice of appeal "as filed immediately after entry of judgment," and consider it to be timely.

Adil also timely appealed from the February 14, 2011 attorney fee order on March 22, 2011. (See Cal. Rules of Court, rule 8.104(a)(1); Code Civ. Proc., § 904.1, subd. (a)(11) & (12) [orders directing payment of monetary sanctions in excess of $5,000 are immediately appealable].)

The March 10, 2011 judgment was not a final judgment, as the court reserved jurisdiction over various issues, including child and spousal support, custody, and the sale of the Sapa Court property and division of the resulting sale proceeds. The lack of any final judgment raises the question whether the orders at issue are appealable. "Whenever there is doubt as to whether we have jurisdiction to hear an appeal, we must raise that issue on our own initiative." (*In re Perris City News* (2002) 96 Cal.App.4th 1194, 1197.) Thus, we address the appealability of each order below.[10]

---

[10] While Kamal does not question the appealability of most of the orders Adil purports to challenge, we nevertheless must address the issue as it is jurisdictional and "[t]he parties cannot create appellate jurisdiction by consent, waiver, or estoppel." (*Vivid Video*, *Inc*. *v*. *Playboy Entertainment Group*, *Inc*. (2007) 147 Cal.App.4th 434, 440-441.) Adil's opening briefs each include an "Appealability" section listing various statutory bases for appealability without reference to the particular orders he appeals. We do not deem it necessary to permit additional briefing pursuant to Government Code section 68081 on the appealability issue. " 'The purpose behind [that provision] is to prevent decisions based on issues on which the parties have had no *opportunity* for input.' " (*People v*. *Alice* (2007) 41 Cal.4th 668, 675.) Here, the parties have had ample opportunity to address the issue. (See *People v*. *Taylor* (1992) 6 Cal.App.4th 1084, 1090, fn. 5 [additional briefing on the standard of review held unnecessary because the issue is "present in *every* case" such that the parties had the opportunity to provide input].)

**II.      DISCUSSION**

As noted above, the briefs filed in these appeals are distinguished by their inadequacy.  For that reason, we begin by providing an overview of the general rules that govern our appellate review and also place certain burdens on the appellant.

*A.      General Rules of Appellate Review*

In conducting our appellate review, we presume that a judgment or order of a lower court is correct.  (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  " 'All intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown.' " (*Ibid.*)  Therefore, a party challenging a judgment or an appealable order "has the burden of showing reversible error by an adequate record." (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574.)  " 'A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed.' " (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416.)  Thus, where the appellant fails to provide an adequate record as to any issue the appellant has raised on appeal, the issue must be resolved against the appellant.  (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.)

Additionally, where the sufficiency of the evidence is challenged on appeal, "the reviewing court must start with the presumption that the record contains evidence sufficient to support the judgment; it is appellant's burden to demonstrate otherwise." (*Baxter Healthcare Corp. v. Denton* (2004) 120 Cal.App.4th 333, 368.)  Therefore, when challenging the sufficiency of the evidence, the appellant is required to provide a summary of *all* of the evidence, not merely his or her own evidence, with citations to the record.  (Cal. Rules of Court, rule 8.204(a)(1)(C); *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.)  In other words, we presume that the record contains sufficient evidence to support the trial court's finding, unless the appellant affirmatively

demonstrates that the evidence is insufficient. (*Baxter Healthcare Corp. v. Denton*, *supra*, at p. 368.)

The appellant must also present argument supported by relevant legal authority as to each issue raised on appeal. " '[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' " (*People v. Stanley* (1995) 10 Cal.4th 764, 793.)

Adil is not exempt from compliance with these rules because he is representing himself. A party who chooses to act as his or her own attorney " 'is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.' " (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247.)

### B. *Roda May Not Urge Error on Appeal*

Before reaching the merits of Adil's contentions on appeal, we must consider whether we have jurisdiction to consider Roda's requests for affirmative relief, advanced in her respondent's brief in H036471. Like Adil, Roda is proceeding in propria persona. Roda seeks, among other things, reversal of many of the orders Adil appeals, as well as declaratory relief that certain of those orders are not binding on her.

Roda maintains she has standing to appeal as an aggrieved party under Code of Civil Procedure section 902. That statute limits appellate standing to *parties* who have been *aggrieved*. (*In re Marriage of Burwell* (2013) 221 Cal.App.4th 1, 12-13.) We need not decide whether Roda is an aggrieved party for purposes of Code of Civil Procedure section 902 because we have no power to entertain her requests for appellate relief for a separate reason--she filed no notice of appeal in H036471. In her brief, Roda notes that she filed a notice of appeal on May 12, 2011, in a separate appeal (H037203) challenging the trial court's March 10, 2011 judgment. Notably, we dismissed Roda's appeal in H037203 as untimely on August 1, 2012. And, in any event, that separate appeal does not relieve her of the obligation to file a notice of appeal here.

13

It is not even clear whether Roda is properly a party to this appeal. She was not joined as a party to the dissolution action until September 14, 2010, after many of the appealed-from orders were issued. And she did not participate as a party in the relevant proceedings that followed her joinder (i.e., the fall 2010 trial).

Assuming Roda is properly a party to the appeal, she is not an appellant, but a respondent. "As a general matter, 'a respondent who has not appealed from the judgment may not urge error on appeal.' " (*Estate of Powell* (2000) 83 Cal.App.4th 1434, 1439.) While Code of Civil Procedure section 906 provides a limited exception " 'to allow a respondent to assert a legal theory which may result in affirmance of the judgment' " (*Estate of Powell*, *supra*, at p. 1439), here Roda "seeks *reversal* of the judgment and entry of a new judgment more favorable to [her]." (*Ibid*.) Having failed to appeal, Roda cannot seek such affirmative relief. (*Ibid*.)

### C. *September 10*, *2009 Order and Section 271 Sanction Awards*

Adil purports to appeal from the September 10, 2009 order denying his motion to set aside the 2008 postnuptial agreement. We are without jurisdiction to entertain that appeal. As noted, there is no final judgment in this case, nor is the September 10, 2009 order made appealable by Code of Civil Procedure section 904.1. We recognize that, in a dissolution action, "if a severable, collateral matter is resolved with finality in the interlocutory judgment [dissolving the marriage], an appeal may be taken from that part of the judgment." (*In re Marriage of Van Sickle* (1977) 68 Cal.App.3d 728, 736.) But that rule does not apply to the September 10, 2009 order because the validity of the 2008 postnuptial agreement was neither resolved in the interlocutory judgment of dissolution nor resolved with finality. Roda abandoned any claim to the Sapa Court property in the 2008 postnuptial agreement. But, as the court explained in its February 2011 attorney fee order, Roda's claimed ownership interest in the home is unresolved and remains before the trial court.

Adil also purports to appeal three section 271 sanction awards in the amounts of

14

$9,900, $1,350, and $2,942.50. He does not explain the basis for the three sanction orders or when each was entered. In reviewing the record, we deduced that the $9,900 section 271 sanction was imposed based on Adil's unsuccessful motion to set aside the 2008 postnuptial agreement, the $1,350 sanction was imposed for abuse of the discovery process, and the $2,942.50 sanction was imposed for failure to cooperate with prior court orders requiring the sale of the Sapa Court property. None of those orders is currently subject to appellate review. Adil waived his right to appeal the $9,900 sanction order by failing to timely appeal. Because that order directed payment of monetary sanctions in excess of $5,000, it was immediately appealable. (Code Civ. Proc., § 904.1, subd. (a)(11) & (12).) Adil's failure to appeal the order within 60 days of its September 10, 2009 issuance resulted in waiver. (See Cal. Rules of Court, rule 8.104(a)(1).) The two other sanction orders, neither of which exceeds $5,000, are not appealable until entry of a final judgment in the action. (Code Civ. Proc., § 904.1, subd. (b).)

For the foregoing reasons, we dismiss the portion of the appeal in H036471 pertaining to the September 10, 2009 order and the three section 271 sanction orders.

### D. *Attorney Fees on Motion for Reconsideration*

Adil also purports to challenge a $1,000 attorney fee award to Kamal ordered in connection with his unsuccessful motion for reconsideration of a September 2009 division of property order. The court did not specify the statute under which it awarded fees, but Kamal's request for fees cited sections 2030 and 271.

Adil maintains the fee award was based on Code of Civil Procedure section 1008, subdivision (d), which governs motions for reconsideration. But we are not convinced that the court based its attorney fee order on Code of Civil Procedure section 1008. Instead, we believe it can reasonably be inferred that the court relied on section 271 because (1) Kamal's request cited that provision and (2) the court ordered that the fees be payable from the proceeds of the sale of the Sapa Court property, which is consistent with section 271, subdivision (c). (§ 271, subd. (c) ["[a]n award of attorney's fees and costs as

15

a sanction pursuant to this section is payable only from the property or income of the party against whom the sanction is imposed, except that the award may be against the sanctioned party's share of the community property"].) That inference also is supported by Adil's statement--made immediately after the court ordered him to pay fees--that he was not financially able to pay "attorney fees under 270, whatever that number is," a clear reference to section 271.

As discussed above, sanctions awards not exceeding $5,000 are not immediately appealable. (Code Civ. Proc., § 904.1, subd. (b).) Thus, we lack jurisdiction to consider Adil's challenge to the $1,000 sanction award and dismiss the portion of the appeal in H036471 pertaining to it.[11]

### E. *May 20, 2010 Order Denying Adil's Motion to Vacate Emergency Screening Order*

Adil lists a May 20, 2010 order denying his motion to vacate an emergency screening order among the orders he is appealing in H036471. We decline to consider this challenge for two reasons. First, we previously ruled that the order--which is a temporary custody order--"is not an appealable order because it is interlocutory." (*In re Marriage of Hiramanek* (Aug. 23, 2012, H035887) 2012 WL 3608515, at *1, fn. 1 [nonpub. opn.].) Second, the issue is abandoned because Adil fails to set forth any relevant facts or legal argument regarding the order. (*Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1120 (*Berger*) ["appellant's failure to present any pertinent or intelligible legal argument in his opening brief constitutes an abandonment of the appeal"].)

---

[11] Adil's notice of appeal indicated that he was appealing the underlying September 2009 division of property order itself. However, he presents no arguments to that effect in his opening brief. Thus, any appeal of the September 2009 division of property order is abandoned.

16

### G. *October 18, 2010 Restraining Order*

#### 1. *Potential Mootness*

Adil appeals the October 18, 2010 restraining order, which expired by its own terms on October 18, 2011.[12] Accordingly, Adil's appeal arguably is moot. However, we elect to consider the merits for two reasons: the parties have not addressed the mootness issue and the domestic violence restraining order could have an impact on subsequent decisions regarding custody and visitation. (See *In re Cassandra B.* (2004) 125 Cal.App.4th 199, 208 [addressing merits of appeal of expired restraining order because underlying issues could have an effect in pending dependency proceedings].)

#### 2. *Governing Law and Standard of Review*

The restraining order is appealable as an appeal from an order granting an injunction. (*R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 187, citing Code Civ. Proc., § 904.1, subd. (a)(6).) Adil's January 10, 2011 appeal was timely under rule 8.108(b)(1) of the California Rules of Court.

"Pursuant to the Domestic Violence Prevention Act (DVPA) (§ 6200 et seq.), a court may issue a protective order to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved." (*S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1264, citing §§ 6220, 6300.) Section 6300 authorizes the issuance of such an order based on "reasonable proof of a past act or acts of abuse." " '[T]he requisite abuse need not be actual infliction of physical injury or assault.' " (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1496.) The Domestic Violence Prevention Act defines "abuse" to include "any behavior

---

[12] Adil indicates that the October 2010 restraining order has been converted into a life-long restraining order, citing "H038830-Feb.27,2012." We consider only the October 2010 restraining order because (1) the life-long restraining order appears to postdate Adil's notice of appeal, and thus is not properly before us on appeal; and (2) the order appears not to be in the record or the voluminous materials of which we have taken judicial notice.

that has been or could be enjoined pursuant to Section 6320." (§ 6203, subd. (d).) "[D]isturbing the peace of the other party" is among the behaviors that may be enjoined under section 6320. (§ 6320, subd. (a).) This court has held that "the plain meaning of the phrase 'disturbing the peace of the other party' in section 6320 may be properly understood as conduct that destroys the mental or emotional calm of the other party." (*In re Marriage of Nadkarni*, *supra*, at p. 1497; *id*., at pp. 1498-1499 ["accessing, reading, and publicly disclosing the content of [wife's] confidential e-mails"]; *id*., at p. 1499 [causing "her to suffer 'shock' and 'embarrassment,' to fear the destruction of her 'business relationships,' and to fear for her safety," constituted disturbing the peace under § 6320].)

We review a grant of a domestic violence protective order for abuse of discretion. (*In re Marriage of Nadkarni*, *supra*, 173 Cal.App.4th at p. 1495.) We review the trial court's factual findings in support of its order for substantial evidence. (*Sabbah v. Sabbah* (2007) 151 Cal.App.4th 818, 822.) Under the substantial evidence test, "[o]ur sole inquiry is 'whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted,' supporting the court's finding." (*Ibid*.) "If this 'substantial' evidence is present, no matter how slight it may appear in comparison with the contradictory evidence, the judgment must be upheld. As a general rule, therefore, we will look only at the evidence and reasonable inferences supporting the successful party, and disregard the contrary showing." (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631.)

### 3. Analysis

Adil challenges the October 18, 2010 restraining order on three grounds: (1) the evidence does not support the court's finding that he was parked outside the Sapa Court property on February 4, 2010; (2) parking outside the Sapa Court property was not prohibited by the civil restraining order; and (3) parking outside the Sapa Court property

did not constitute "abuse" within the meaning of the DVPA. We address each argument in turn.

First, the court's finding that Adil was parked outside the Sapa Court property on February 4, 2010, is supported by substantial evidence--namely, Kamal's testimony to that effect. Adil argues that Kamal is not credible, but it is not our role to second-guess witness credibility. (*In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1531.) Adil also notes that he denied being outside the home on February 4, 2010, and that his story was verified by an alibi. But "[t]he testimony of a single witness can provide substantial evidence." (*Oregel v. American Isuzu Motors*, *Inc.* (2001) 90 Cal.App.4th 1094, 1101.) And even contradicted substantial evidence is sufficient to support a court's finding. (*Sabbah v. Sabbah*, *supra*, 151 Cal.App.4th at p. 822.) Accordingly, Kamal's testimony constitutes substantial evidence supporting the court's finding that Adil was parked outside the Sapa Court home in February 2010.

Second, Adil maintains that parking outside the Sapa Court property did not violate the civil restraining order. We disagree. That order required Adil to "stay away" from Kamal, *her residence*, and her vehicle. Adil's claim that he was allowed to be outside the Sapa Court property so long as Kamal was not in his line of sight is contradicted by the plain language of the civil restraining order.

Third, Adil argues the February 4 incident does not constitute "abuse" under section 6300. As noted, the court concluded Adil's conduct disturbed Kamal's peace. In the context of the DVPA, " 'disturbing the peace of the other party' " means "conduct that destroys the mental or emotional calm of the other party." (*In re Marriage of Nadkarni*, *supra*, 173 Cal.App.4th at p. 1497.) Thus, the question before us is whether the finding that Adil's conduct destroyed Kamal's "mental or emotional calm" is supported by substantial evidence. We conclude it is.

At trial, Kamal presented evidence of numerous alleged violations of the civil restraining order by Adil. She did not testify as to how the February 4 incident, in

19

isolation, impacted her mental and emotional state, but rather that the alleged violations *collectively* made her feel that "[t]here is no end [to] what [Adil] could do to the children, to me or to my mother" "when there's no [restraining] order in place." Kamal testified that she was "so afraid" at the prospect of Adil coming into the Sapa Court home that she asked friends to stay over at the house after the civil restraining order lapsed. She further stated: "I fear totally for my safety. . . . [Adil] had threatened me [']I will destroy you and your family if you leave me a second time.['] . . . And he has made good that threat so far. And it has become his sole purpose in life, I think, to just try to destroy me." Kamal's testimony as to her state of mind supports the finding that Adil's conduct had "destroy[ed her] . . . mental or emotional calm." (*In re Marriage of Nadkarni*, *supra*, 173 Cal.App.4th at p. 1497.) Accordingly, we cannot say the court's decision constituted an abuse of discretion.

### *H*. **Watts** *Reimbursement*

Adil appeals from the court's denial of his request for *Watts* reimbursement for the period March 3, 2009, to November 30, 2010. That ruling is appealable because the issue of *Watts* reimbursement for the specified period is "severable and collateral to the other matters involved in this case, and the lower court's resolution . . . left nothing further of a judicial nature to be done." (*In re Marriage of Van Sickle*, *supra*, 68 Cal.App.3d at p. 743.)

#### *1. Governing Law and Standard of Review*

Under *Watts*, *supra*, 171 Cal.App.3d 366, " '[w]here one spouse has the exclusive use of a community asset during the period between separation and trial, that spouse may be required to compensate the community for the reasonable value of that use.' " (*In re Marriage of Falcone & Fyke*, *supra*, 203 Cal.App.4th at p. 978.) The determination whether to award *Watts* charges "should be made after taking into account all the circumstances under which exclusive possession was ordered." (*Watts*, *supra*, at p. 374.)

20

We review that decision for abuse of discretion. (*In re Marriage of Hebbring* (1989) 207 Cal.App.3d 1260, 1272.)

        *2.     Analysis*

Adil urges the trial court committed three errors in denying his *Watts* use reimbursement claim.

First, Adil contends that the court erroneously deviated from a stipulation in which the parties agreed that any *Watts* charge would be based on the value of the Sapa Court property as an *unoccupied* residence. According to Adil, the parties entered into that stipulation on July 14, 2010, in the presence of pro tempore settlement judge Neville Spadafore. Not so. In his capacity as a settlement judge, Judge Spadafore reported back to the trial court regarding the parties' progress in reaching a settlement. On July 14, 2010, he informed the court that, with respect to the *Watts* issue, he had encouraged the parties to agree on the rental value of the house as unoccupied that the court could use as a "stipulated number." The record makes clear that no stipulation was reached. Moreover, Judge Spadafore could not properly have rendered an opinion on the merits of Adil's *Watts* reimbursement claim and any statements he may have made in confidential settlement discussions with the parties were not binding on the trial court.

Second, Adil argues that--regardless of any stipulation--the court should have based its ruling on the fair market *usage* value of the home *without* occupants, rather than its fair market rental value with Roda as an occupant. To the extent Adil attempts to draw a distinction between usage value and rental value, we see none. In the context of a residence, rental value *is* usage value, and courts regularly use fair market rental value in calculating *Watts* charges. (See *In re Marriage of Jeffries* (1991) 228 Cal.App.3d 548.) Consistent with that case law, both parties urged the court to use fair market rental value here. Therefore, the court did not err by considering the rental value of the home.

Nor did the court err by considering Roda's presence. As noted, *Watts* applies " '[w]here one spouse has the *exclusive* use of a community asset.' " (*In re Marriage of*

21

*Falcone & Fyke*, *supra*, 203 Cal.App.4th at p. 978, italics added.) Accordingly, the court properly considered Roda's presence in determining the nature of Kamal's use and was within its discretion in implicitly concluding that Roda's presence denied Kamal exclusive possession. That implicit finding of nonexclusive possession is supported by Kamal and Roda's testimony regarding Roda's use of the home. The court's inquiry should have ended there with a denial of Adil's *Watts* reimbursement claim. Instead, the court went on to consider the value of Kamal's nonexclusive use, found it to be zero, and denied Adil's *Watts* claim on that reasoning. "In reviewing a trial court's decision, we review the result, not the reasoning." (*Florio v. Lau* (1998) 68 Cal.App.4th 637, 653.) Here, the court reached the correct outcome despite its faulty reasoning, and therefore we will not reverse.

Third, Adil maintains that the court erred by excluding his expert's valuation of the property's value. We need not decide whether the exclusion was error because any error was harmless--the court was within its discretion to conclude that Kamal had nonexclusive possession and to deny the request on the ground. Consequently, there was no need to reach the issue of fair market rental value.

For the foregoing reasons, Adil has not demonstrated that the court abused its discretion in denying his request for *Watts* reimbursement.

### I.     *Cancellation of Deeds of Trust*

Adil challenges the trial court's cancellation of the deeds of trust. The ruling--which "set aside, vacated, and ordered expunged from the public record" the deeds of trust--is appealable because the issue is "severable and collateral to the other matters involved in this case, and the lower court's resolution . . . left nothing further of a judicial nature to be done." (*In re Marriage of Van Sickle*, *supra*, 68 Cal.App.3d at p. 743.)

The thrust of Adil's appeal is that there is insufficient evidence supporting the trial court's underlying findings that the deeds of trust (1) were executed sometime after the March 2009 effective date of the automatic temporary restraining order, and not on July

22

15, 2008, as the deeds of trust purport; and (2) are phony, designed not to secure any real debts but to render Adil without assets, and thus judgment-proof.

Both findings are supported by ample evidence and reasonable inferences. Specifically, both findings are supported by evidence that the deeds of trust were not recorded until November 2009, Kamal's testimony that she knew nothing about them until sometime during the second dissolution action, and Adil's failure to disclose the deeds of trust in court papers filed in May and October 2009. That evidence reasonably supports inferences that the deeds of trust first came into being in November 2009, were designed to render Adil judgment-proof, and were backdated to avoid the automatic temporary restraining order. The inference that the deeds of trust do not secure real debts is supported by the fact that the beneficiaries are Adil's family members. Because the court's underlying findings are supported by substantial evidence, Adil has failed to demonstrate error.

Adil also urges that Roda was a necessary party to the action to set aside the deeds of trust. We decline to reach the merits of that argument.[13] As a threshold matter, the argument is waived because Adil raises it for the first time in his reply and, even then, cites no supporting case law or other authority. (See *Alhambra Bldg. & Loan Assn. v. DeCelle* (1941) 47 Cal.App.2d 409, 412 [argument that necessary party was not joined can be waived]; *Sustainability of Parks*, *Recycling & Wildlife Legal Defense Fund v. County of Solano Dept. of Resource Management* (2008) 167 Cal.App.4th 1350, 1358 [" 'Failure to join an "indispensable party" is not "a jurisdictional defect" ' " and thus can be waived]; *Berger*, *supra*, 163 Cal.App.3d at p. 1120 [failure to present intelligible legal argument constitutes abandonment of appeal].) While Adil's opening brief purports to incorporate Roda's respondent's brief, in which she argues that she should have been

---

[13] We express no opinion as to whether the order cancelling the deeds of trust is binding on Roda.

23

joined, we do not believe that incorporation is sufficient to avoid waiver. As discussed above, we have concluded Roda cannot properly urge error on appeal. We doubt it would be appropriate to allow Adil to adopt those otherwise improper arguments.

In any event, Adil "tenders no developed prejudice argument" based on the court's failure to join Roda. (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106 ["appellant bears the duty of spelling out in his brief exactly how the error caused a miscarriage of justice"].) Indeed, he does not even mention prejudice in his opening brief, nor does Roda explain how the order prejudices Adil. Therefore, he has not carried his burden to show the court prejudicially erred in cancelling the deeds of trust. (*People v. Nero* (2010) 181 Cal.App.4th 504, 510, fn. 11 ["Joinder [of arguments advanced in another brief] may be broadly permitted (Cal. Rules of Court, rule 8.200(a)(5)), but each appellant has the burden of demonstrating error and prejudice"].)

### *J.* *Adil's Section 2030 Request for Attorney Fees*

Adil appeals from the denial of his mid-trial request for section 2030 attorney fees, which he requested after firing his attorney so that he could hire a new one.

#### *1.* *Governing Law and Standard of Review*

Section 2030 empowers the trial court to award attorney fees and costs to one party in a dissolution proceeding in order to "ensure that each party has access to legal representation."[14] An award under section 2030 is permitted only "where the making of the award, and the amount of the award, are just and reasonable under the relative

---

[14] Section 2030, subdivision (a)(1) provides: "In a proceeding for dissolution of marriage, nullity of marriage, or legal separation of the parties, and in any proceeding subsequent to entry of a related judgment, the court shall ensure that each party has access to legal representation, including access early in the proceedings, to preserve each party's rights by ordering, if necessary based on the income and needs assessments, one party, except a governmental entity, to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding."

24

circumstances of the respective parties." (§ 2032, subd. (a).)

While the court has wide discretion in determining what is "just and reasonable," that determination is guided by the considerations set forth in section 2032. (See § 2032, subd. (b); *In re Marriage of Falcone & Fyke*, *supra*, 203 Cal.App.4th at p. 975.) Those considerations include the parties' financial resources, the parties' earning capacities, documented evidence of any history of domestic violence, the balance of the hardships to each party, and any other factors the court determines are "just and equitable." (§ 4320, subd. (n); *id*., subds. (a), (i), (k); § 2032, subd. (b).)

We review a denial of attorney fees under section 2030 for abuse of discretion. (*In re Marriage of O'Connor* (1997) 59 Cal.App.4th 877, 881.) "[W]e will not reverse absent a showing that no judge could reasonably have made the order, considering all of the evidence viewed most favorably in support of the order." (*In re Marriage of Falcone & Fyke*, *supra*, 203 Cal.App.4th at p. 975.)

2.    *Analysis*

The court denied Adil's November 29, 2010 request for section 2030 attorney fees on two grounds--(1) it was untimely, and (2) the court previously had determined that Adil had the financial resources necessary to hire an attorney. On appeal, Adil claims that these are not valid grounds for denying a section 2030 request. We disagree.

A court is permitted to consider *any* factors it determines are relevant to whether an award is just and equitable. (See §§ 2032, subd. (b), 4320, subd. (n).) The court did not abuse its discretion in concluding that the timing of Adil's request--in the middle of trial after he fired his attorney on the (apparently false) representation that he wanted to represent himself--rendered an award of fees inequitable. (*In re Marriage of Falcone & Fyke*, *supra*, 203 Cal.App.4th at p. 976 [court did not err in considering "the 11th-hour nature of [the section 2030] motion [as] a factor in denying the motion"].)

Adil's ability to pay an attorney also is a relevant consideration. (§ 2032, subd. (b) ["the court shall take into consideration the need for the award to enable each party, to

25

the extent practical, to have sufficient financial resources to present the party's case adequately"].) Adil does not dispute that the court previously had concluded that he had the necessary financial resources, nor did he indicate to the trial court that he was making the motion because the parties' relative financial circumstances had changed. The court did not act irrationally by denying the motion in view of a prior relevant finding in unchanged circumstances. For these reasons, it was a reasonable exercise of discretion for the court to deny Adil's request for attorney fees under section 2030.

### K. *Due Process*

Adil contends the trial court violated his due process rights by imposing time limitations on both the 2010 restraining order trial and the fall 2010 trial, as well as by denying his attempt to change counsel in the middle of the latter trial. These contentions lack merit.

Regarding the time limitations, trial courts have "inherent power to control litigation before them," including by setting trial time limits. (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967; see also *Blumenthal v. Superior Court* (2006) 137 Cal.App.4th 672, 683 [trial courts "retain great power to prevent civil trials from taking more time than necessary"].) "We review orders issued pursuant to the court's inherent powers for abuse of discretion." (*San Francisco Unified School Dist. ex. rel. Contreras v. First Student, Inc.* (2013) 213 Cal.App.4th 1212, 1227.) Here, the court requested input from counsel before determining the length of each trial and gave the parties ample notice of the time limits to be imposed. Specifically, the trial court set the restraining order request for a one-day trial in July 2010 (two months before the trial took place) without objection from either party. Likewise, the court set the dissolution and related issues for a one-day trial on May 27, 2010, with no objection from counsel. Thereafter, in two pretrial filings, Adil stated that one day would not be sufficient and estimated that the trial would require three to five days. But his counsel made no objection regarding the one-day limit at the start of the trial, despite the fact that the court

26

had not extended the time for trial. And, at the end of the first day of trial, the court made clear that when the trial reconvened the parties would have "close to a full day" to conclude. Again Adil's counsel did not object. Under these circumstances, we can find no abuse of discretion. Moreover, even assuming that the trial court abused its discretion, Adil has failed to show prejudice by indicating what additional evidence he would have presented if he had been given the time to do so. (See *Turman v. Turning Point of Central California, Inc.* (2010) 191 Cal.App.4th 53, 58 [" 'Prejudice is not presumed, and the burden is on the appealing party to demonstrate that a miscarriage of justice has occurred.' "].)

Adil also complains that the court violated his due process rights by denying his request to continue the fall 2010 trial so that he could hire a new attorney. Adil made that request orally in the middle of the first day of the trial, which had been scheduled for months. Adil was being represented by counsel at the time, but he explained that he was "not comfortable with [her] representing [him] . . . because of her limited family law knowledge." He further explained that the new lawyer he wanted to hire was unavailable that day. The court did not abuse its discretion in denying Adil's request for two reasons. (*Forthmann v. Boyer* (2002) 97 Cal.App.4th 977, 984 ["decision to grant or deny a continuance is committed to the sound discretion of the trial court"].) First, Adil failed to "make the request for a continuance by a noticed motion or an ex parte application . . . , with supporting declarations" as required by California Rules of Court. (Cal. Rules of Court, rule 3.1332(b).) Second, Adil failed to make the requisite showing of "good cause" (*id.*, rule 3.1332(c)), as "an unexplained change of counsel immediately preceding the time set for the hearing of the cause" does not constitute good cause. (*Estate of Dargie* (1939) 33 Cal.App.2d 148, 158; see also *County of San Bernardino v. Doria Mining & Engineering Corp.* (1977) 72 Cal.App.3d 776 [court did not abuse discretion by denying defendant's motion for continuance made on trial date and based on

substitution of attorneys where plaintiff had brought a witness and was ready to proceed].)

In sum, Adil has not established a violation of his due process rights.

### L.    *Appeal From February 14, 2011 Order*

On February 14, 2011, the trial court ruled on Adil and Kamal's requests for attorney fees and sanctions. The court sanctioned Adil in the amount of $100,000 under section 271, payable to Kamal "from [Adil's] share of the proceeds of the sale of the home." The court reserved jurisdiction to modify the sanctions order, noting that Roda's claimed ownership interest in the home had not been resolved and a modification may be appropriate if it is later determined Adil does not have a 71 percent ownership interest in the home. The court denied Adil's requests for fees under sections 271, 2030, 3027.1, and 3028.

#### 1.    *Section 271 Sanctions Against Adil*

We lack jurisdiction to consider Adil's appeal of the section 271 sanctions award. An order awarding attorney fees but reserving jurisdiction to modify that award "is not a final adjudication of the issue" and thus is not appealable. (*Chapman v. Tarentola* (1960) 187 Cal.App.2d 22, 25 [order reserving jurisdiction to award attorney fees is nonfinal and nonappealable]; see also *P R Burke Corp. v. Victor Valley Wastewater Reclamation Authority* (2002) 98 Cal.App.4th 1047, 1053 ["if a judgment determines that a party is entitled to attorney's fees but does not determine the amount, that portion of the judgment is nonfinal and nonappealable" until the amount of fees is determined].) Because the court reserved jurisdiction to modify the section 271 sanctions award that portion of its order is not currently appealable. Therefore, we dismiss the portion of the appeal in case No. H036723 pertaining to the $100,000 section 271 sanction.[15]

---

[15] The remainder of the February 2011 order--which denied various requests for fees by Adil--is appealable under the collateral order doctrine "because it possesses all (continued)

### 2. *Denial of Section 271 Sanctions Against Kamal*

Adil complains that the court should have granted his request for section 271 sanctions against Kamal based on her efforts to thwart child visitation and the selection of a child visitation supervisor. As discussed below in the context of Adil's request for financial compensation under section 3028, which is premised on the same alleged conduct, Adil has failed to establish that Kamal's behavior was sanctionable. And even if it was, Adil's own behavior contributed equally to the delay in selecting a child visitation supervisor. Accordingly, the trial court was within its discretion in refusing to award sanctions against either party in connection with that portion of the litigation.

### 3. *Section 2030*

Adil argues that the trial court erred in denying his section 2030 request for attorney fees. While Adil's brief is difficult to decipher, he appears to advance three arguments: (1) the court failed to consider the parties' relative financial resources, (2) the court did not properly weigh the relevant section 4320 factors, and (3) the court erred by not holding a hearing on his section 2030 request. None of his claims has merit.

The trial court made a sufficient assessment and comparison of the parties' relative financial circumstances and ability to pay attorney fees. The court considered the evidence of the parties' respective incomes and expenses, as set forth in their most recent income and expense declarations. The court determined that Adil "has sufficient undisclosed assets or income to, at minimum, pay his monthly expenses, as well as pay for his own attorney fees and costs." The court acknowledged that the income and expense declarations indicated that Kamal "is in a far better situation financially to access legal representation than" is Adil, but--based on Adil's track record of failing to be

---

the elements of a final judgment on the issue of whether [Adil] may be able to obtain such fees." (*Askew v. Askew* (1994) 22 Cal.App.4th 942, 964, fn. 37 [denial of a request for attorney fees pendente lite is appealable].)

29

forthcoming on his income and expense declarations--the trial court found that Adil lacked credibility concerning the financial evidence he had submitted. In deciding the matter, the trial court relied on a past misleading financial declaration and Adil's incredible claims that he spends thousands of dollars a month but has no income. On the record before us, we are of the opinion that the trial court adequately considered the parties' financial resources.

To the extent Adil is arguing that the trial court's findings were not supported by substantial evidence, that challenge fails as well. "On substantial evidence review, we do not 'weigh the evidence, consider the credibility of witnesses, or resolve conflicts in the evidence or in the reasonable inferences that may be drawn from it.' " (*Do v. Regents of University of California* (2013) 216 Cal.App.4th 1474, 1492.) But that is precisely what Adil asks us to do, arguing--for example--that the court should have credited his testimony. The court's findings regarding Kamal's monthly income, savings, and claimed interest in the Sapa Court property are supported by her most recent income and expense declaration. Adil faults the court for excluding evidence that he claims shows Kamal failed to disclose $2 million in overseas investments. The court did not err in excluding the evidence, as Adil did not even attempt to lay a foundation for or to authenticate the documents. (*Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 321 ["writings must be authenticated before they are received into evidence"].) Instead, he merely attached them to a brief not signed under penalty of perjury without even stating what he purported the documents to be. (*Ibid.* ["a document is authenticated when sufficient evidence has been produced to sustain a finding that the document is what it purports to be"].) Viewing the evidence in the light most favorable to the judgment, resolving conflicts and drawing inferences in support of the judgment, we conclude that the trial court did not err in concluding that the parties' relative financial resources did not justify an award of attorney fees to Adil.

The court's denial of Adil's request for section 2030 fees was not predicated

solely on the parties' financial resources. As the statute requires, the court considered many of the factors set forth in section 4320, including the parties' earning capacities, documented evidence of past domestic violence, and the balance of the hardships to each party. (See §§ 2032, subd. (b), 4320, subds. (a), (i), (k).) Adil effectively urges us to reweigh the evidence as to each factor based on numerous assertions unsupported by citation to the record.[16] We decline to do so.

Adil's objection to the lack of a separate hearing on his request for section 2030 fees is not well taken. Adil waived any right he may have had to an oral hearing by expressly agreeing to submit the attorney fee issues on the parties' briefs and declarations. (*In re Marriage of Petropoulos* (2001) 91 Cal.App.4th 161, 179 [wife waived any right to § 271 hearing where she did not "request[] a separate hearing on the sanction issue" and "acquiesce[d] in the trial court's briefing schedule for written submission of the fee issue"].)

Adil also asserts that the court erred by failing to appoint a referee under section 2032, subdivision (d). That provision grants the court discretion to "order that a referee be appointed pursuant to Section 639 of the Code of Civil Procedure to oversee the allocation of fees and costs." (§ 2032, subd. (d).) Adil's bald assertion that the court should have granted his unopposed request for a referee does not establish abuse of discretion. (*Reed v. Reed* (1953) 118 Cal.App.2d 399, 400.)

### 4. Section 3027.1

"Section 3027.1, subdivision (a), allows a court to impose reasonable money sanctions, and any attorney fees incurred in recovering the sanctions, against a person

---

[16] For example, Adil argues that he does not have the capacity to earn more than his current income ($500 a month) because Kamal's discovery abuses ruined his career; he is too busy litigating this case and going to court-ordered therapeutic supervised visitations, mandatory accountability in relationship courses, and therapy sessions; he is 52 years old; he is over-qualified; and the job market is difficult. He cites no evidence supporting these claims.

31

who knowingly makes a false accusation of child abuse or neglect in a child custody proceeding." (*Robert J. v. Catherine D.* (2009) 171 Cal.App.4th 1500, 1515.) "We review the trial court's interpretation and application of section 3027.1 under a de novo standard of review." (*Id.* at p. 1514.)

The court denied Adil's request on the ground that he failed to point to specific allegedly false accusations of abuse or neglect that Kamal made against Adil in a child custody proceeding. On appeal, Adil argues that his trial court brief specified particular incidents. He relies on two bald assertions in that brief: (1) Kamal had a neighbor fabricate false allegations of abuse by Adil on March 2, 2009; and (2) Kamal "instructed the children to state 'bad things about dad if the police were to ever come.' " Neither assertion is supported by any evidence, nor does either identify an accusation made *by Kamal in a child custody proceeding*. Rather, the first alleges an accusation made by a neighbor to police at a time while no dissolution action was pending; the second alleges that Kamal encouraged the children to say "bad things" that may or may not have amounted to abuse or neglect. For these reasons, we agree with the trial court that Adil had failed to identify the sort of false accusations required by section 3027.1.

Adil also faults the court for neither issuing an order to show cause on the requested sanctions nor scheduling a hearing, as he argues was required by section 3027.1, subdivision (b). "[T]he OSC referred to in section 3027.1, subdivision (b) provides the mechanism to bring nonparties before the court, allowing them an opportunity to defend themselves against a charge of making a knowingly false accusation in the underlying custody proceeding." (*In re Marriage of Dupre* (2005) 127 Cal.App.4th 1517, 1527.) Because Adil failed to charge any nonparties with making false accusations in an underlying custody proceeding, there was no need for an order to show cause or a hearing. Moreover, as noted above, the parties expressly agreed to submit all attorney fees and sanction issues on the briefs. Accordingly, Adil waived any right to a hearing.

32

#### 5. Section 3028

Subdivision (a) of section 3028 authorizes the court to "order financial compensation for periods . . . when a parent has been thwarted by the other parent when attempting to exercise custody or visitation rights contemplated by a custody or visitation order." The trial court denied Adil's request for such compensation, reasoning that he did not establish that Kamal had thwarted his visitation rights.

Adil's request for section 3028 compensation relied largely on the parties' long-running dispute regarding the selection of a therapist to supervise Adil's visitation with the children, as required by a court order. As with most of the issues Adil raises on appeal, our review of the matter is severely hampered by his confusing and incomplete presentation of the relevant facts. Our review of the record indicates that, even if Adil's allegations regarding Kamal's conduct are believed, his own behavior significantly impeded the process of selecting a child visitation supervisor. For example, for months, Adil insisted on having Kaiser provide the therapeutic services despite the fact that they do not provide such services. At one hearing, Kamal's counsel presented a letter from Kaiser stating that they would not provide the court-ordered services. Despite having no evidence to the contrary, Adil spent the majority of that hearing fighting with the court about whether Kaiser would provide the therapeutic services. As mandated by the court order requiring supervised child visitation, Kamal proposed a number of therapists, all of whom Adil rejected because they charged more than $50 an hour. He claimed to have identified a provider who charged $50 an hour, but accused Kamal of convincing the provider to raise her rate to $175 an hour. Adil provided no evidence to support that far-fetched claim.

In view of the foregoing, we conclude that Adil has failed to show that the trial court erred in concluding that he did not establish that Kamal had thwarted his visitation rights.

33

## III. DISPOSITION

We dismiss those portions of appeal No. H036471 seeking review of the September 10, 2009 order; the September 10, 2009 Family Code section 271 sanction order ($9,900); the two September 15, 2009 section 271 sanction orders ($1,350 and $2,942.50); and the November 20, 2009 section 271 sanction order ($1,000). All other orders and the interlocutory judgment appealed from in No. H036471 are affirmed.

We dismiss that portion of appeal No. H036723 seeking review of the $100,000 section 271 sanction order. The remainder of the February 2011 order appealed from in No. H036723 is affirmed.

Kamal shall recover her costs on appeal.[17]

---

[17] On reply, Adil requests that we direct that further proceedings be heard before a different trial judge outside of Santa Clara County Superior Court under Code of Civil Procedure section 170.1, subdivision (c). That provision allows us to disqualify a judge if the interests of justice require it. (*Hernandez v. Superior Court* (2003) 112 Cal.App.4th 285, 303.) Adil contends that justice requires the disqualification of Judge Clark because he is biased against Adil. In support of that claim, Adil claims that a federal district court--in a decision he does not bother to cite--has held that Judge Clark exceeded the bounds of his authority in this case. We located the ruling, which Adil misrepresents. Far from crediting Adil's accusations, the federal court held that Adil's contentions (i.e., that Judge Clark acted without jurisdiction) lacked merit and "at most suggest that the state court judges may acted in excess of their authority." (*Hiramanek v. Clark* (N.D. Cal., July 19, 2013, C-13-0228 EMC) 2013 WL 3803613.) The federal court--acting at the pleading stage and thus accepting all allegations as true--did not make a finding as to whether Judge Clark in fact exceeded his authority. Judge Clark's orders, which we affirm, do not suggest bias. Adil does not explain his request to disqualify all other Santa Clara County Superior Court trial judges. Thus, we deny Adil's request.

34

_____

Premo, J.

WE CONCUR:


_____

Rushing, P.J.


_____

Márquez, J.

35