[Civ. No. 2579. Fifth Dist. Mar. 30, 1977.]

In re the Marriage of BETH and JACK VAN SICKLE.
BETH VAN SICKLE, Appellant, v.
JACK VAN SICKLE, Appellant.

COUNSEL

Jackson & Wheatley, H. Herbert Jackson, Anthony J. Scalora and Gregory F. Gilbert for Appellant Wife.

Watson & Hoffe, Francis A. Watson, Jr., Ronald A. Rubenstein and George J. Ziser for Appellant Husband.

OPINION

GARGANO, J.—This litigation originated in the court below on July 23, 1968, when appellant Beth Van Sickle, hereafter referred to as wife, filed a complaint seeking declaratory relief as to the validity of a Nevada divorce obtained by her husband, appellant Jack Van Sickle, hereafter referred to as husband; in the same complaint, wife also sought a division of the parties' community property, custody of the parties' two minor children, child support, spousal support, attorney's fees and costs. Later, after the court noticed an intended decision holding that the Nevada divorce was invalid, wife amended her original pleading to include a petition for the dissolution of the marriage. Both sides have appealed from the interlocutory judgment the court subsequently entered dissolving the parties' marriage.

Briefly, the pertinent facts are these.

The parties were married on June 3, 1955; they separated nine years later, on June 19, 1964. At the time of separation, the couple had two children, a daughter, Hettie, born on February 7, 1957, and a son, Wayne, born on March 3, 1963.

On June 3, 1955, when the parties were married, husband owned a parcel of land near Elk Grove in Sacramento County, part of which he had acquired from his parents, and part of which he had purchased from another individual. He also owned 508 acres of land in Douglas County, Nevada, and El Dorado County, California, which he purchased in 1941 for $7,000; this land was situated near and along the California-Nevada border at South Lake Tahoe and hereafter will be referred to as the Patterson Parcel.

After the marriage, the parties resided in a home situated on the California side of the Patterson Parcel. Thereafter, the couple worked hard to preserve and improve the land. In 1960 they acquired 240 acres of land in Douglas County, Nevada; this land, hereafter referred to as the Hansen Parcel, adjoined the Patterson Parcel.

During the parties' marriage a relatively small portion of the Patterson Parcel on the California side was subdivided into a shopping center, apartments and resort facilities. Later, ownership of the subdivided lands was transferred to three corporations in which husband was the only stockholder; at the time of trial the corporations and the remaining property were worth millions of dollars.

On June 19, 1964, when the parties separated, wife and the two minor children left the family residence at South Lake Tahoe and moved to Sacramento; husband later moved to the State of Nevada.

On January 22, 1965, husband filed a complaint in a Nevada state court to obtain a divorce from his wife. The complaint, among other things, alleged that husband and wife had purchased a 240-acre parcel of land in Douglas County in 1960 (i.e., the Hansen Parcel), and that they held title to the land as community property. In reality, the couple purchased the property as joint tenants, and before serving a copy of the complaint on wife, husband's lawyer deleted the words "community property" from the copy and inserted in lieu thereof the words "joint tenants;" the original complaint never was corrected.

On February 25, 1965, the Nevada court entered judgment granting husband a divorce from wife; although the court found that the 240 acres of property in Douglas County was community property, it awarded all of the property to husband. It is this judgment that the Superior Court of Sacramento County declared invalid.

At the conclusion of the trial in the present case, the court entered an interlocutory judgment dissolving the parties' marriage which contained numerous other judicial determinations. First, the judgment declared the Nevada divorce decree obtained by husband void and not entitled to full faith and credit in California; awarded joint legal custody of the minor children to the parties, with the physical custody of the girl, Hettie, going to husband, and the physical custody of the boy, Wayne, going to wife; and ordered husband to pay wife the sum of $200 a month toward the support of the minor child, Wayne.

Second, the judgment delineated with particularity each item of property the court *determined was community property* of the marriage. However, because one of the corporations the court found to be community property was involved in a lawsuit with a third party over a leasing agreement, and because the resolution of the lawsuit could substantially affect the value of the stock of that corporation, the court did not fix the value of the stock or any other community property asset; nor did the court divide any of the community property between the parties. Instead, the court reserved jurisdiction to fix the value of the respective community property assets and to divide the community property at a later date, pursuant to the authority of subdivision (a) of section 4800 of the Civil Code.

Third, the judgment terminated all temporary spousal support orders and directed wife to reimburse husband, either directly or from her share of the community property, at the time the community property was divided, for all of the court-ordered temporary spousal support payments husband made to her and for certain obligations he paid on her behalf. It also directed the parties to make certain adjustments for specified sums of money each party owed the corporations found to be community property, and ordered husband to pay wife the sum of $3,000 a month until such time as the community property was divided, the payments to be charged to her share of the community property. The court did not award spousal support but retained jurisdiction over that issue.

While both parties have appealed, the focal point of the appeals is on that part of the interlocutory judgment which delineates the community property; several weeks of trial were spent in the court below on this hotly contested issue, and neither party is satisfied with the court's conclusions in this respect. The central question, therefore, is whether the court's decision delineating the community property of the marriage, without fixing the value of the assets or dividing the community property between the parties, is appealable *merely because the decision is embodied in an interlocutory judgment of dissolution of marriage which is made appealable by statute.* (See Code Civ. Proc., § 904.1, subd. (j).)

We have concluded that the answer to this question is in the negative. ▆ First, it is a settled principle of appellate practice that unless otherwise provided by statute, an appeal lies only from a judgment that terminates the proceeding in the lower court by disposing of all issues of law and fact, insofar as the court has the power to do so. (*Bank of America* v. *Superior Court* (1942) 20 Cal.2d 697, 701-702 [128

P.2d 357]; *Nolan v. Smith* (1902) 137 Cal. 360, 361-362 [70 P. 166]; *Vallera v. Vallera* (1944) 64 Cal.App.2d 266, 270 [148 P.2d 694]; see *Tenhet v. Boswell* (1976) 18 Cal.3d 150, 153 [133 Cal.Rptr. 10, 554 P.2d 331]; *Bakewell v. Bakewell* (1942) 21 Cal.2d 224, 226-227 [130 P.2d 975].) This principle, known as the "one final judgment" rule is grounded on the theory that ". . . piecemeal disposition and multiple appeals in a single action would be oppressive and costly, and that a review of intermediate rulings should await the final disposition of the case." (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 36, p. 4050; accord *Knodel v. Knodel* (1975) 14 Cal.3d 752, 760 [122 Cal.Rptr. 521, 537 P.2d 353]; *Efron v. Kalmanovitz* (1960) 185 Cal.App.2d 149, 154 [8 Cal.Rptr. 107]; *Brown v. Memorial Nat. Home Foundation* (1958) 158 Cal.App.2d 448, 455 [322 P.2d 600, 72 A.L.R.2d 997].) Furthermore, while an exception is made as to a matter which is collateral to the main controversy, the exception applies only if the matter is severable from the general subject of the litigation, and then *only if a decision thereon determines finally the rights of the parties in relation to the collateral matter, leaving no further judicial acts to be done by the court in regard to that matter.* Such a determination is substantially the same as a final judgment in an independent proceeding. (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368 [134 Cal.Rptr. 197, 556 P.2d 297]; *Meehan v. Hopps* (1955) 45 Cal.2d 213, 216-217 [288 P.2d 267]; *Spencer v. Spencer* (1967) 252 Cal.App.2d 683, 688-689 [60 Cal.Rptr. 747]; see 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 38, 39, pp. 4052-4053.)

■ Second, California adheres to the concept of "divisible divorce" (*Lopez v. Lopez* (1965) 63 Cal.2d 735, 737 [48 Cal.Rptr. 136, 408 P.2d 744]; *Hull v. Superior Court* (1960) 54 Cal.2d 139, 147 [5 Cal.Rptr. 1, 352 P.2d 161]), and, hence, controversies over division of marital property, custody of minor children and, under appropriate circumstances, spousal support need not be litigated in the proceeding brought to dissolve the marriage; such controversies may be litigated in a separate action. (*Hudson v. Hudson* (1959) 52 Cal.2d 735, 744-745 [344 P.2d 295]; *Estate of Williams* (1950) 36 Cal.2d 289, 292-293 [223 P.2d 248, 22 A.L.R.2d 716]; *In re Marriage of Fink* (1976) 54 Cal.App.3d 357, 362 [126 Cal.Rptr. 626]; *Callnon v. Callnon* (1935) 7 Cal.App.2d 676, 680 [46 P.2d 988]; see *Hull v. Superior Court, supra,* 54 Cal.2d 139, 147-148; cf. *See v. Superior Court* (1960) 55 Cal.2d 279, 280-281 [10 Cal.Rptr. 634, 359 P.2d 32]; *Chichester v. Chichester* (1964) 228 Cal.App.2d 491, 495-496 [39 Cal.Rptr. 553].) Since disputes over division of marital property, custody of minor children and spousal support are essentially collateral to the issue of dissolving the marriage (see *Hull v. Superior Court, supra,* 54 Cal.2d 139,

147), it has been stated that the "divisible divorce" concept is not inconsistent with the basic principle that a single action should result in only one final appealable judgment because each action results in a single judgment disposing of the issue involved in that action (*In re Marriage of Fink, supra,* 54 Cal.App.3d 357, 362).

■ Lastly, if essentially collateral matters such as the division of community property, child custody and spousal support are in dispute in the proceeding for the dissolution of the marriage, they may be bifurcated for trial so that the dissolution issue can be resolved promptly at an early trial; if this occurs, an immediate appeal may be taken from the interlocutory judgment dissolving the marriage to review the correctness of the court's decision terminating the marriage. (*In re Marriage of Fink, supra,* 54 Cal.App.3d 357, 362-366; see *Hull* v. *Superior Court, supra,* 54 Cal.2d 139, 147-148.) As the court explained in *In re Marriage of Fink,* the Family Law Act of 1970 " . . . embodied a legislative intent that the dissolution of marriage should not be postponed merely because issues relating to property, support, attorney fees or child custody were unready for decision." (*Supra,* 54 Cal.App.3d at p. 363.) The court further stated in that opinion that "[t]he early and separate trial of the dissolution issue . . . might prove to be of little benefit to a spouse seeking speedy disentanglement, if that determination did not become a judgment until all other issues had been decided." (*Supra,* 54 Cal.App.3d at p. 364.)

In light of these principles, it seems clear to us that the legislative policy in permitting an interlocutory judgment of dissolution of marriage to be a judgment from which an appeal can be taken, is to enable the court to resolve, promptly and simply, the dissolution issue in marriages which have irrevocably failed. (See *In re Marriage of Fink, supra,* 54 Cal.App.3d 357, 364, 366.) It also seems clear to us that controversies over such matters as the division of marital property, child custody and spousal support raise severable, collateral issues which can be decided independently of the dissolution of marriage issue. Consequently, if a matter severable and collateral to the issue of terminating the marriage is in dispute in a dissolution of marriage proceeding, an appeal may be taken from the interlocutory judgment dissolving the marriage even though the collateral matter is bifurcated and is still unresolved when the interlocutory judgment dissolving the marriage is entered. ■ Also, if a severable, collateral matter is resolved with finality in the interlocutory judgment, an appeal may be taken from that part of the judgment. (*In re Marriage of Stuart* (1972) 27 Cal.App.3d 834, 837-838 [104 Cal.Rptr.

395]; see Cal. Rules of Court, rule 1(a).) But, if the court elects to reserve jurisdiction to decide a severable, collateral matter, such as the division of the community property, at a time subsequent to the entry of the interlocutory judgment dissolving the marriage, no appeal may be taken from any interim or preliminary ruling or decision the court may make as to that collateral matter even though the ruling or decision is embodied in the interlocutory judgment of dissolution of marriage.

To recapitulate, an appeal may be taken from an interlocutory judgment dissolving a marriage and from any part of the judgment which decides a severable, collateral matter with finality. However, to hold that interim and preliminary rulings or decisions affecting severable and collateral matters arising in connection with the dissolution of a marriage are appealable as well, merely because they are embodied in the interlocutory judgment dissolving the marriage, would pave the way to a piecemeal disposition of such severable and collateral issues in contradiction of the very rationale upon which the "one final judgment" rule is predicated. For example, under the guise of appealing from the interlocutory judgment dissolving the marriage, parties could litigate on a piecemeal basis complex preliminary questions affecting the ultimate division of community property before the property is divided, thus flooding the already overburdened appellate courts with needless and multiple appeals.

■ For the reasons we have articulated, it is patent that the part of the interlocutory judgment in question merely purporting to delineate the community property assets of the parties, without dividing them, is at best an interim decision on a matter severable and collateral to the issue of the dissolution of the marriage and that the attempts of the parties to raise issues pertaining to the nature and character of the property in question in this appeal from the interlocutory judgment of dissolution of marriage are premature. (Cf. *Lauderdale* v. *U. & I. Equip. Co.* (1969) 271 Cal.App.2d 140, 142-143 [76 Cal.Rptr. 483].) Still to be decided are such important questions as the value to be placed on each asset and the manner in which the community property is to be divided. In fact, the community property assets described in the judgment are primarily ownerships of stocks in corporations which could have fluctuating values, and it is conceivable that the parties could be dissatisfied with the ultimate values fixed by the court on those assets or with the manner of distribution; if so, further appeals will follow. In addition, the court purported to order the parties to make certain monetary adjustments when the community assets are divided, the propriety of which essential-

ly will turn upon the value of community property received by each party; accordingly, it is impossible in this appeal to determine whether the adjustments are proper or whether the court abused its discretion on these points. For instance, the trial court denied wife's request for spousal support primarily on the ground that she ultimately was going to receive community property of great value and, instead, ordered husband to pay her $3,000 a month, and then directed that the amounts so paid be charged to her share of the community property; until such time as the value of the community property assets is fixed and the property is divided, there is no way we can judge the propriety of the order. Thus, when the community property is ultimately divided, if wife still is dissatisfied with the court's denial of spousal support and the court's order on the $3,000 payments, another appeal will be necessary.

In rebuttal, the parties apparently assume that merely because subdivision (a) of section 4800 of the Civil Code authorizes the superior court to retain jurisdiction to divide the community property at a time subsequent to the entry of the interlocutory judgment of dissolution of marriage, any order the court may make as to the community property is appealable if the order is embodied in the interlocutory judgment of dissolution of marriage *no matter how interimistic or preliminary that order may be.* They primarily rely upon *In re Marriage of Brown* (1976) 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 561] for this proposition. In that case, the Supreme Court held that the superior court could award each spouse an appropriate portion of future nonvested pension payments as they became due even though the court would have to retain jurisdiction to supervise its order. (*Supra,* 15 Cal.3d at pp. 848-849.) The high court also held that its decision that those portions of nonvested pension rights earned during the marriage were to be treated as community property assets should not apply retroactively in cases where the property rights of the marriage already had been adjudicated by a decree of dissolution that had become final, unless the decree expressly reserved jurisdiction to divide the pension rights at a later date. (*Supra,* 15 Cal.3d at p. 851.)

The parties' reliance on the *Brown* opinion is misplaced. In *Brown,* the Supreme Court recognized the difficulty of evaluating nonvested pension rights which might never mature due to death or termination of employment. It was in this context that the high court indicated that the superior court could solve the uncertainty by awarding each spouse an appropriate portion of each pension payment as it becomes due and payable. It was also in this context that the high court indicated that the

fact that the superior court would be required to retain jurisdiction to supervise its order was not a deterring factor. However, it is evident that a judgment awarding each spouse an appropriate portion of a nonvested pension payment if and as it becomes due and payable, is for all intents and purposes a final judgment; the retention of jurisdiction to see that the order is carried out is purely administrative in nature (see, *supra,* 15 Cal.3d at pp. 848-849) and does not deprive the judgment of its finality (*Goodman* v. *Community S. & L. Assn.* (1966) 246 Cal.App.2d 13, 20 [54 Cal.Rptr. 456]).

Turning briefly to the Supreme Court's statement that the *Brown* decision was retroactive as to those cases where the court had retained jurisdiction to divide the community property under authority of subdivision (a) of section 4800 of the Civil Code, the court had reference *only* to those decrees in which the superior court retained jurisdiction to divide *nonvested pension rights* if and when they became vested. (See, *supra,* 15 Cal.3d at p. 851.) The high court did not imply that every interim or preliminary ruling or decision affecting vested community property rights is appealable as part of an appeal from an interlocutory judgment dissolving a marriage when embodied in such a judgment.

We consider next wife's contention that the court abused its discretion in denying her permanent spousal support. As we have indicated, the trial court denied wife's request for permanent spousal support primarily for the reason that the court was of the opinion that she ultimately was going to receive community property of great value, and we cannot judge the propriety of this order until after the value of the community property has been fixed and the community property has been divided. For the same reasons, we cannot decide the question as to whether the court abused its discretion in refusing to award the parties' attorney's fees and costs.

■ We conclude, however, that in any event, the court erred in directing wife to repay husband or to reimburse husband from her share of the community property for all temporary spousal support payments he made pursuant to pendente lite spousal support orders. Under section 4357 of the Civil Code, any order awarding spousal support during the pendency of a dissolution proceeding " . . . may be modified or revoked

at any time except as to any amount that may have accrued prior to the date of filing of the notice of motion or order to show cause to modify or revoke." (See also Civ. Code, § 4801, subd. (a).) As far as the record before us indicates, husband never noticed a motion to reduce or discontinue the pendente lite spousal support payments he was making to wife; it appears that the court ordered wife to make restitution of all prior pendente lite support payments paid to her as part of its overall plan to have the ultimate division of community property to be absolutely equal. Under these circumstances, the court's order requiring wife to reimburse husband for temporary spousal support payments made during the pendency of the dissolution proceeding was in effect an impermissible attempt to modify the preexisting temporary spousal support orders retroactively. (See *Keck* v. *Keck* (1933) 219 Cal. 316, 320-321 [26 P.2d 300]; *In re Marriage of Ludwig* (1976) 58 Cal.App.3d 744, 749-750 [130 Cal.Rptr. 234]; *Vick* v. *Superior Court* (1965) 239 Cal.App.2d 105, 108 [47 Cal.Rptr. 840].)

■ The trial court correctly determined that the Nevada divorce decree was void. As is pertinent to this case, the Nevada law required a copy of the summons and a copy of the complaint to be served upon wife. However, while the copy of the complaint served upon wife correctly described the Nevada land as joint tenancy ownership, the original complaint on file with the Nevada court incorrectly alleged that the land was community property, and this inaccuracy never was corrected. ■ It is elementary that where the law requires service of process by the delivery of a copy of the complaint with the summons, the copy of the complaint must conform with the original; although inconsequential irregularities between the original and the copy do not necessarily invalidate the service, substantial and misleading deviations in the copy that is served will defeat the court's jurisdiction. (See *Hershenson* v. *Hershenson* (1962) 205 Cal.App.2d 382, 385 [23 Cal.Rptr. 185]; *McGinn* v. *Rees* (1917) 33 Cal.App. 291, 293-294 [165 P. 52]; 62 Am.Jur.2d (1972) Process, § 20, pp. 802-803.)

■ In this case the altered copy of the complaint served upon wife admitted that wife had an undivided one-half interest in the Nevada property. On the other hand, the allegation in the complaint on file with the Nevada court stated that the Nevada land was community property and made it possible for the court to award all of the property to husband; the alteration was substantial and misleading. Under these circumstances, the service was invalid and subject to collateral attack.

(See 72 C.J.S. (1951) Process, § 1, p. 986; 62 Am.Jur.2d (1972) Process, § 157, p. 941; 46 Am.Jur.2d (1969) Judgments, § 757, pp. 919-920.)

We turn to the points raised by husband in his petition for rehearing.

Husband alleges that a material fact was omitted from the opinion. He complains because we did not mention the fact that the court determined that some of the property which husband owned at the time of the marriage was transmuted to community property by an implied agreement. It should be apparent to husband that we omitted to state this fact because the implied transmutation agreement is one of the crucial issues involved in the severable, collateral matter we held was nonappealable.

Husband asserts that in reaching our decision we ignored the practical considerations. He cites for an example the drastic gift tax consequences attendant to the division of property which was originally separate property and which the court found was transmuted to community property. Practical considerations do not make a nonappealable order appealable. Further, the trial court's decision as to the transmutation is an interim decision and there can be no tax consequences until the community property has been divided and the judgment has become final.

Husband complains because we did not discuss the cases of *Degnan* v. *Morrow* (1969) 2 Cal.App.3d 358 [82 Cal.Rptr. 557] and *Clovis Ready Mix Co.* v. *Aetna Freight Lines* (1972) 25 Cal.App.3d 276 [101 Cal.Rptr. 820]. He maintains that these cases support his position that we should have entertained the appeal on the community property issue.

In *Degnan* plaintiff and defendant entered into a partnership on a real estate development; they sought a dissolution of the partnership, a partnership accounting, and the partition of certain partnership real property. Thereafter, an appeal was taken from the court's order partitioning the real property though the judgment made no provision for the dissolution of the partnership; the trial court had declared that the partners owned the real property "jointly and equally" and if they were unable to agree on an equal division they were to sell the property and divide the proceeds equally. In entertaining the appeal, the appellate court merely held, in essence, that the partition of the real property was separate and collateral to the partnership dissolution and that the court's partition order made a *final determination* of property rights; it also directed the performance of an act, i.e., the sale of the property if the

parties could not agree on a division. In short, the appellate court treated the partition order as a severable matter in which nothing further of a judicial nature had to be done.

In *Clovis Ready Mix Co.*, a premature appeal was taken from a trial court's order granting a partial summary judgment and dismissing plaintiff's complaint before issues raised by the cross-complaint were adjudicated. The court treated the appeal as a petition for an extraordinary writ and resolved the legal issues. Husband relies upon this case to argue that we should entertain the appeal on the issue of the nature and character of the community property in the interest of justice and to avoid further delays. Extraordinary writs, such as mandamus or prohibition, are often used to resolve legal issues raised by pleadings or motions granting partial summary judgments in order to avoid hardships and unnecessary litigation where the lower court's ruling bars a substantial portion of a party's cause from being heard on the merits. (See e.g., *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 807 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513].) No such situation is involved in the present case. In fact, before a final division of the community property the trial court may be induced to change its position as to the extent, nature and character of community property, thus curing any possible error. (See 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 52, p. 3827.)

Husband insists that the trial court's determination that wife should reimburse husband for the temporary spousal support payments finds justification in the court's power to achieve an equitable division of the community property. He contends the court's decision determining that a substantial portion of his separate property was transmuted into community property means that wife has a one-half interest in some very substantial income-producing assets, and accordingly the accounting adjustment ordered by the trial court as to the already paid temporary spousal support was in effect a determination that the community property and not husband would bear the burden of wife's support. (See Civ. Code, § 4805.) If this is true, and if husband used his separate property to make the temporary spousal support payments, husband should not seek reimbursement directly from wife but from the community.

Husband claims that this court itself has engaged in piecemeal appellate review by considering some but not all of the judicial determinations appearing in the interlocutory judgment of dissolution of marriage. In particular, he mentions our review of the order requiring

wife to reimburse husband for the temporary spousal support payments and the declaratory judgment determining the Nevada divorce decree to be invalid. Both matters are severable and collateral to the other matters involved in this case, and the lower court's resolution of these matters left nothing further of a judicial nature to be done; as such, both judicial determinations are final for the purposes of appeal. (See *In re Marriage of Skelley, supra,* 18 Cal.3d 365, 368; *Meehan* v. *Hopps, supra,* 45 Cal.2d 213, 217; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 38-40, pp. 4052-4055.)

The purported appeals from that part of the judgment delineating the community property and from all interim orders affecting the ultimate distribution of the community property are dismissed. That part of the judgment ordering wife to reimburse husband for all temporary spousal support paid to her pursuant to the pendente lite spousal support orders is reversed. All parts of the judgment that otherwise are final, the propriety of which are dependent upon the ultimate distribution of the community property (including the order denying spousal support, the order relating to the $3,000-a-month payments to be made to wife, the order pertaining to attorney's fees and costs and the various final orders concerned with reimbursements that are to take place before the community property is divided), are reversed with directions to the trial court to reconsider the issues raised by such orders in light of the ultimate division of the community property. In all other respects, the judgment is affirmed. The parties are to bear their own costs on appeal.

Brown (G. A.), P. J., and Franson, J., concurred.

The petition of appellant Husband for a hearing by the Supreme Court was denied June 9, 1977.