Filed 8/24/16  Marriage of Shurr CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re the Marriage of MELISSA and BRETT SHURR. | |
| BRETT C. SHURR, | C071412 |
| Respondent, | (Super.Ct.No. 04FL01857) |
| v. | ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT] |
| MELISSA A. SHURR, | |
| Appellant. | |

THE COURT:

It is ordered that the opinion filed herein on July 26, 2016, be modified as follows:

1.      Following the last sentence of the last full paragraph which begins on page 9 with "At oral argument. . . ." insert the following footnote:

Wife filed a petition for rehearing arguing *Van Sickle* is inapt because it was decided when a former statutory provision allowed an appeal from an "interlocutory"

1

dissolution judgment. While that may be true, its reasoning that marital status determinations are generally separate and independent from collateral property, custody, and support rulings remains valid. (*In re Marriage of Van Sickle* (1977) 68 Cal.App.3d 728, 735-736 ["Since disputes over division of marital property, custody of minor children and spousal support are essentially collateral to the issue of dissolving the marriage [citation], it has been stated that the 'divisible divorce' concept is not inconsistent with the basic principle that a single action should result in only one final appealable judgment because each action results in a single judgment disposing of the issue involved in that action"]; see *In re Marriage of Lafkas* (2007) 153 Cal.App.4th 1429, 1433 [citing *Van Sickle* for the proposition "[d]isputes over the division of marital property may be litigated separately from the proceeding to dissolve the marriage"]; *Estate of Lahey* (1999) 76 Cal.App.4th 1056, 1059 ["The concept of divisible divorce permits issues of marital status and financial responsibility to be litigated at separate times and in different forums"].) Wife's argument that the separate property contribution issue was not a "collateral matter" but rather the main issue, is belied by her earlier arguments to this court where she took the position that Judge Winn's January 2006 order characterizing husband's separate property contribution and Judge Hight's February 2006 order disbursing half of the separate property contribution funds to husband together constituted a final judgment on a collateral matter. (See case No. C052135, Appellant's Opening Brief at pp. 1-3 ["Wife contends, however, that the January 19 order is reviewable on appeal from the order entered February 24, 2006 (AA 328), because together they constitute a final judgment on a collateral matter"].) We do not see how the final order in this case encompassed in the Bifurcated Judgment, which disbursed *all* the remaining separate property contribution funds to husband, plus interest, would now be any less collateral. In any event, as husband points out, even if the separate property contribution issue is not collateral under these circumstances, we have already recognized that in 2008 the trial court bifurcated the issue of custody and proceeded to decide the

remaining property issues in the case.  (See *In re Marriage of Shurr* (May 10, 2011,

C059951) [nonpub.opn.] at p. *4.)  The Bifurcated Judgment, then, was final for purposes

of appealing the separate property contribution issue.


BY THE COURT:



      HULL          , P. J.



      BUTZ          , J.

Filed 7/26/16  Marriage of Shurr CA3 (unmodified version)

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re the Marriage of MELISSA and BRETT SHURR. | |
| BRETT C. SHURR,<br><br>            Respondent,<br><br>      v.<br><br>MELISSA A. SHURR,<br><br>            Appellant. | C071412<br><br>(Super.Ct.No. 04FL01857) |

The present dissolution of marriage action has a long history before this court, with both the wife, Melissa Shurr, and the husband, Brett Shurr, appealing, cross appealing, moving to dismiss, and seeking writ review of multiple issues over many years.  Wife now purports to appeal from a Judgment on Reserved Issues entered on April 23, 2012, that she claims finally resolves the parties' marital dissolution dispute.

Husband moves to dismiss the appeal as untimely. Briefly summarized, husband claims wife seeks review of a 2006 order determining his right to an approximately $400,000 separate property contribution to the family residence under Family Code section 2640 (unless otherwise set forth, section references that follow are to the Family Code), and a 2008 document captioned "Findings and Order for Judgment on Bifurcated Issues of Spousal Support and Remaining Property Issues, Pendente Lite Child Support" (Judgment on Bifurcated Issues), which, among other things, ordered that the section 2640 funds be disbursed to husband in full. According to husband, the court's orders and decisions regarding the section 2640 funds were ripe for appeal when the Judgment on Bifurcated Issues was entered in 2008. Although wife did appeal factual findings, and spousal and child support issues from the court's 2008 ruling, she did not raise the section 2640 issue in that appeal. (See *In re Marriage of Shurr,* (May 10, 2011, C059951) [nonpub.opn.] (*Shurr II*).) Husband argues she should have and that she cannot do so now. We agree. We therefore dismiss the appeal as untimely.

FACTS AND PROCEEDINGS

Husband and wife were married in 1994. Prior to marriage, husband owned a home in Elk Grove. He also periodically received payments under a structured settlement stemming from the wrongful death of his father when he was a minor. Under the structured settlement, he received lump sum payments of $25,000 in 1994 and $27,500 in 1995.

In 1997, husband and wife purchased a home on five acres in Wilton. Husband contributed a portion of the sale proceeds of his separate property residence in Elk Grove towards the purchase price of the Wilton property. They eventually decided to tear down the existing home on the Wilton property to build a new home.

Construction on the new home began in July 1998. Around the same time, husband's grandfather passed away, leaving him a sizable inheritance. Rather than obtain

2

a construction loan for the new family residence on the Wilton property, husband decided to use his inheritance to fund the construction.

Husband filed for divorce in March 2004. Among other things, the petition for dissolution requested that the court confirm as separate property assets all property or funds received by gift or inheritance, including funds inherited from husband's grandfather used to construct the family home.

The court entered a status only judgment of dissolution in December 2004, reserving jurisdiction over all other issues. The parties stipulated to bifurcate and try first the issue of husband's claimed separate property contribution to the family residence. A three day trial on that issue followed in August 2005 before Judge Winn. Based on husband's testimony and the testimony and report of husband's forensic accounting expert, the court found husband had contributed $403,564.17 in separate property funds to purchase and improve the Wilton property. Judge Winn issued a written Statement of Decision on November 17, 2005. The Statement of Decision directed husband to prepare a judgment in accordance with its decision.

Before the court issued its Statement of Decision, the parties agreed to sell the Wilton property. Escrow closed on the sale on November 30, 2005. The house sold for approximately $630,000, and the proceeds were split between their attorneys' trust accounts pending further written agreement or court order. The first $403,564.17 of the sales proceeds were placed in the trust account of husband's counsel, and the remaining proceeds were split between the trust accounts of the parties' respective attorneys.

Husband's counsel submitted a document entitled Judgment on Bifurcated Issue of Petitioner's Claim for Reimbursement of Separate Property Contributions to Family Residence. After crossing out the reference to "Judgment" in the caption as well as a provision stating that the proceeds from the sale of the family home would be used to reimburse husband for his separate property contribution, Judge Winn signed the Order on Bifurcated Issue of Petitioner's Claim for Reimbursement of Separate Property

3

Contributions to Family Residence on January 19, 2006. The January 2006 order stated that husband "shall be reimbursed" the sum of $403,654.17 as his separate property contribution.

On February 10, 2006, husband moved for disbursement of $403,654.17 from the home sale proceeds in his attorneys' trust account to satisfy his separate property contribution. Wife objected arguing husband had failed to sufficiently prove his contribution claim. The motion was heard on February 28, 2006, before Judge Hight. In response to the court's question of whether an appeal had been taken from Judge Winn's January 2006 order determining husband's separate property contribution under section 2640, wife's counsel characterized the order as an interim order that was not yet appealable. This was because, according to wife's counsel, the order merely found husband had a right to reimbursement based on the separate property tracing but the court had not ordered any release of funds to satisfy that right. In other words, because no money was ordered to be paid, she could not yet appeal.

At the hearing, wife also conceded that she would only be entitled to half the approximately $400,000 contribution if Judge Winn's January 2006 order was overturned. Judge Hight therefore ordered that $201,782.08 be immediately disbursed to husband and the other half would remain in his attorney's trust account.

On March 7, 2006, wife appealed from Judge Winn's January 2006 order and Judge Hight's February 2006 order. This court dismissed her appeal three months later citing Family Code section 2025, which partly provides that, "[n]otwithstanding any other provision of law, if the court has ordered an issue or issues bifurcated for separate trial or hearing in advance of the disposition of the entire case, a court of appeal may order an issue or issues transferred to it for hearing and decision when the court that heard the issue or issues certifies that the appeal is appropriate." (§ 2025.)

Two years passed before the parties tried the remaining spousal support and property division issues in the case. The issue of child custody was apparently reserved

4

for later resolution. Judge McBrien presided at the trial on January 31, February 1 and February 7, 2008.

At the court's direction, the parties stipulated to resolve numerous property division issues at the start of trial. During trial, husband claimed, among other things, that he was entitled to the remaining half of his separate property contribution in the amount of $201,782.08, which was still deposited in his attorney's trust account, plus $22,159.33 in interest that had accrued on those separate funds over the last two years.

On February 7, 2008, Judge McBrien ruled that husband shall "receive his [section] 2640 funds in the amount of . . . $223,941.42 within ten days. I'll reserve over this issue that was not raised in testimony but merely in argument regarding the interest and review my notes and thus may well modify that portion of it." The minute order stated: "Petitioner to receive his [section] 2640 FC funds in amount of $223,941.42 within 10 days, reserve over interest and any additional interest."

The court took the spousal support judgment and child support pendente lite modification and Watts claim under submission. On February 14, the court issued a tentative decision disposing of those issues. After receiving a request for a statement of decision on February 15, 2008, "the [c]ourt issued a final minute order adopting its partial decision dated 2/7/08, and its 'Ruling re: Remaining Issues on Submitted Matters,' dated 2/14/08, collectively, as the court's tentative decision." The court ordered husband to prepare the formal order after trial.

On September 4, 2008, Judge McBrien issued his formal order entitled "Findings and Order for Judgment on Bifurcated Issues of Spousal Support and Remaining Property Issues, Pendent Lite Child Support" (Judgment on Bifurcated Issues), which included his February rulings after the trial that husband's remaining separate property contribution under section 2640, together with interest on the money, be disbursed to him. Wife appealed the Judgment on Bifurcated Issues. (See *Shurr II* at p. *1.) She challenged some of Judge McBrien's factual findings and asserted that he erred in ordering a step

5

down of both child and spousal support. (*Ibid.*) Wife did not raise or challenge the portion of the Judgment on Bifurcated Issues that directed $223,941.42 be disbursed to husband as his remaining separate property contribution to the family home under section 2640. (*Ibid.*)

Husband moved to dismiss wife's appeal in *Shurr II* claiming she could not appeal Judge McBrien's September 2008 order until entry of final judgment. (*Shurr II* at p. *7.) This court, however, concluded otherwise. (*Id.* at p. *11.) Citing the collateral order doctrine, we found that a direct appeal from Judge McBrien's order was proper even though no final judgment had been issued in the action. (*Id.* at p. *10.) We ultimately reversed Judge McBrien's Judgment on Bifurcated Issues concerning the support calculations, determining they were based on erroneous findings, and to the extent it ordered a step down in child support. (*Id.* at p. *21.) In all other respects, Judge McBrien's Judgment on Bifurcated Issues was affirmed. (*Id.* at p. *22.) The matter was remanded to the trial court to recalculate both spousal and child support and to determine any appropriate attorneys' fees. (*Id.* at p. *58.)

Further proceedings in the trial court regarding child custody issues and attorneys' fees were eventually resolved and resulted in entry of a Judgment on Reserved Issues on April 23, 2012. Wife has now appealed the Judgment on Reserved Issues. She does not challenge either child custody or attorneys' fees, however. Instead, wife claims Judge Winn erred in January 2006 in finding husband proved the right to reimbursement of a $403,564.17 separate property contribution to the family home under section 2640, and that Judge McBrien erred in ordering those funds disbursed to husband in full, including interest, after the trial on the remaining spousal support and property division issues in February 2008.

6

Husband moves to dismiss the present appeal as untimely. He contends wife is barred from raising the section 2640 separate property reimbursement issue because she could have, but did not, challenge Judge Winn's and Judge McBrien's rulings on that issue when she initially appealed from Judge McBrien's September 2008 Judgment on Bifurcated Issues.

Wife, on the other hand, argues Judge Winn's January 2006 order that found husband had contributed approximately $400,000 in separate property to the family home under section 2640 and Judge McBrien's February 2008 order (later formalized in the September 2008 Judgment on Bifurcated Issues) finally disbursing those separate property funds to husband in full were not appealable. She claims community property issues still remained for determination, and that those issues were not resolved until April 2012 when the court entered the Judgment on Reserved Issues. We disagree.

" 'The right to appeal in California is wholly governed by statute and appellate courts have no jurisdiction to entertain appeals except as provided by the Legislature. [Citation].' " (*In re Marriage of Griffin* (1993) 15 Cal.App.4th 685, 687 (*Griffin*).) " 'If a judgment or order is appealable, an aggrieved party *must* file a *timely* appeal or forever *lose* the opportunity to obtain appellate review.' " (*Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 46, original italics (*Norman*).)

Code of Civil Procedure section 904.1 governs appeals in civil cases. (Code Civ. Proc., § 904.1.) That statute generally provides that an appeal may be taken "[f]rom a judgment except (A) an interlocutory judgment . . . ." (*Id.* at subd. (a).) It also permits an appeal from an order " 'made appealable by the provisions of the . . . Family Law Act [Family Code as of January 1, 1994] . . . .' " (*Griffin, supra,* 15 Cal.App.4th at p. 687; Code Civ. Proc., § 904.1, subd. (10).)

7

The intent of Code of Civil Procedure section 904.1 is to codify the *one final judgment rule*, "a fundamental principle of appellate practice . . . ." (*Griffin, supra,* 15 Cal.App.4th at p. 687.)  Based on the theory that piecemeal disposition and multiple appeals in a single action is oppressive and costly, the one final judgment rule mandates that a review of intermediate rulings should await an action's final disposition.  (*Ibid.*)

" 'A judgment is not appealable unless it is final in the sense that it decides the rights and duties of the parties and terminates the litigation.  [Citation.]' " (*Griffin, supra,* 15 Cal.App.4th at p. 689.)  " ' "[W]here anything further in the nature of judicial action on the part of the court is essential to a final determination of the right of the parties, the decree is interlocutory." [Citation.]' " (*Ibid.*)

There are exceptions to the one final judgment rule, however.  "When a court renders an interlocutory order collateral to the main issue, dispositive of the rights of the parties in relation to the collateral matter, and directing payment of money or performance of an act, direct appeal may be taken.  [Citations.] . . . Such a determination is substantially the same as a final judgment in an independent proceeding." (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368.)  This exception is known as the collateral order doctrine.  (*Lester v. Lennane* (2000) 84 Cal.App.4th 536, 561.)  That doctrine, we believe, applies here.

Here, the orders challenged on appeal must be viewed together.  Judge Winn's January 2006 order, which found husband had a right to reimbursement for his separate property contribution in the amount of approximately $400,000, was arguably interlocutory and not immediately appealable as it did not actually order the payment of any money or otherwise divide the asset.   (See e.g., *In re Marriage of Ellis* (2002) 101 Cal.App.4th 400, 403 (*Ellis*) [interlocutory order characterizing asset as community property without actually dividing the asset was nonappealable]; *In re Marriage of Van Sickle* (1977) 68 Cal.App.3d 728, 737 (*Van Sickle*) [appeal from part of interlocutory

8

judgment of dissolution that purported to delineate community property assets of parties, without dividing them, is an interim decision that cannot be appealed].)

The same cannot be said, however, about Judge McBrien's February 2008 order that was later embodied in the Judgment on Bifurcated Issues entered in September 2008. The judge clearly ordered that husband's section 2640 separate property contribution be immediately reimbursed in full to husband. Thus, the court's February 2008 order after the trial on spousal and child support and the remaining property issues and the September 2008 Judgment on Bifurcated Issues *did actually divide the asset and direct that money be paid* to satisfy husband's right to the separate property contribution to which Judge Winn found he was entitled in January 2006. Once the money was disbursed, there was nothing left for the court to do regarding husband's separate property reimbursement under section 2640. The January 2006 order and the February 2008 order, then, were appealable from the Judgment on Bifurcated Issues entered in September 2008.

At oral argument, wife asserted that the collateral order doctrine does not apply because the division of property never qualifies as a collateral matter in a marital dissolution proceeding. We disagree. *Van Sickle*, for example, makes clear that "disputes over division of marital property, custody of minor children and spousal support *are essentially collateral* to the issue of dissolving the marriage." (*Van Sickle, supra,* 68 Cal.App.3d at p. 735; italics added.) Thus, "controversies over such matters as the division of marital property, child custody and spousal support raise severable, collateral issues which can be decided independently of the dissolution of marriage issue." (*Id.* at p. 736.) The *Van Sickle* court recognized that an appeal lies from any part of an interlocutory judgment "which decides a severable, collateral matter with finality." (*Id.* at p. 737.) That is what occurred here. The court finally adjudicated husband's separate property contribution and ordered the money disbursed to him in full.

Wife implicitly acknowledged as much at the February 2006 hearing before Judge Hight on husband's motion to disburse the funds after selling the family residence. At the hearing, her counsel stated that she could not appeal Judge Winn's January 2006 order because he had not yet ordered the payment of any money. Apparent in counsel's statement is the notion that an order directing the payment of the separate property reimbursement would be directly appealable. That is precisely what Judge McBrien's order and judgment in 2008 did.

While wife admittedly appealed from the September 2008 Judgment on Bifurcated Issues concerning temporary spousal and child support and pendente lite attorneys fees in *Shurr II*, she did not raise the separate property reimbursement issue in that appeal. (See *Shurr II* at p. *1.) She is barred from belatedly doing so now. (*Norman, supra,* 220 Cal.App.3d at p. 46 [" 'If a judgment or order is appealable, an aggrieved party *must* file a *timely* appeal or forever *lose* the opportunity to obtain appellate review' "].)

Wife's argument that she preserved her right to appeal the separate property reimbursement issue in the settlement agreement underlying the Judgment on Reserved Issues entered in April 2012 is also unavailing. Parties cannot confer appellate jurisdiction by consent or stipulation. (*Branner v. Regents of the University of California* (2009)175 Cal.App.4th 1043, 1049.)

For similar reasons, we reject wife's claim that husband is estopped from arguing the appeal is untimely because he previously argued Judge Winn's initial 2006 order was not yet appealable. The Supreme Court explained long ago that " ' "in order to work an estoppel," ' a representation ' "must generally be a statement of *fact*. It can rarely happen that the statement of a proposition of law will conclude the party making it from denying its correctness, except when it is understood to mean nothing but a simple statement of fact." [Citation.]' " (*Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1315 [citing *McKeen v. Naughton* (1891) 88 Cal. 462, 467, where the court applied this principle to reject the claim that a party's opposition to a motion to dismiss an appeal for

lack of jurisdiction estopped the party from later arguing that the judgment rendered upon that appeal was void for lack of jurisdiction].)

The existence of an appealable judgment, moreover "is a jurisdictional prerequisite to an appeal. A reviewing court must raise the issue on its own initiative whenever a doubt exists as to whether the trial court has entered a final judgment or other order or judgment made appealable" by statute. (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126.) And this court already rejected husband's argument that the 2008 Judgment on Bifurcated Issues was not appealable in *Shurr II*. (*Shurr II* at p. *11.)

Likewise, wife's assertion that some community property assets still remained in the attorney trust accounts to be divided among the parties does not render the severable orders regarding husband's separate property reimbursement unappealable. Family law courts routinely retain jurisdiction to divide omitted assets. (See § 2556 [the family court has continuing jurisdiction to "award community estate assets or community estate liabilities to the parties that have not been previously adjudicated by a judgment in the proceeding"].) Thus, the fact that some community property assets were not divided did not render the Judgment on Bifurcated Issues interlocutory for purposes of the separate property reimbursement. (*In re Marriage of Walrath* (1998) 17 Cal.4th 907, 913 ["[u]nder section 2640, the separate property contribution is reimbursed *prior* to the division of community property"]; original italics.)

Because wife failed to raise the separate property reimbursement issue when she appealed from the September 2008 Judgment on Bifurcated Issues, she cannot do so now. The time to appeal the ruling and disbursement of husband's separate property reimbursement has long since come and gone. The appeal, therefore, is dismissed.

DISPOSITION

The appeal is dismissed.  Husband is awarded his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)

      HULL      , J.

We concur:

      NICHOLSON   , Acting P. J.

      BUTZ      , J.