Filed 12/28/23  Marriage of Docherty CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of CHERYL and BEVAN DOCHERTY. | H050067 (Santa Cruz County Super. Ct. No. 17FL01134) |
| CHERYL DOCHERTY, Appellant, v. BEVAN DOCHERTY, Respondent. | |

Cheryl Docherty appeals from a judgment of dissolution of her marriage to Bevan Docherty that, among other things, addressed the division of property.  Cheryl[1] challenges the trial court's refusal to include in the community property divided certain stock options granted to Bevan during the marriage.  For the reasons explained below, we conclude that the trial court erred in not characterizing Bevan's stock options as partly community property and remand with instructions to determine the community share in those options and make an equitable division of that share.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

Cheryl and Bevan were married in February 2009 and have two children.  In August 2017, they separated, and Bevan sued for dissolution of the marriage.

_____

[1] Because the parties share the same last name, for the sake of clarity, we refer to the parties by their first names.  In doing so, we intend no disrespect.

A.     *The Crowdstrike Stock Options*

In May 2016, a little more than a year prior to the separation, Bevan began working for Crowdstrike, a cybersecurity company. When he started, Bevan was granted options to purchase 5,000 shares of Crowdstrike stock, with an initial vesting date in May 2017 and exercisable two years after an initial public offering or a change in control of the company. Additional shares vested monthly, so that by August 2017 when the parties separated, nearly 1,500 shares had vested. In 2019, Crowdstrike held an initial public offering.

B.     *Disclosures*

During the dissolution proceedings, Bevan completed several schedules of his assets and debts. While the largest asset by far was the marital residence, the schedules also disclosed household furniture, electronics, and appliances; jewelry; at least one vehicle; and a checking account. The first schedule, completed in December 2017, did not disclose ownership of Crowdstrike stock options. The second schedule, completed in July 2019, disclosed "Crowdstrike Shares" with a then-current value of $267,995. Bevan described these shares as "SP/CP," presumably meaning separate and community property.

Bevan also filed several income and expense declarations. The last of these declarations, which was filed in October 2020, indicated ownership of "$80,00 [sic] (ESPP)" in stock options.

C.     *The Bench Trial and the Tentative Statement of Decision*

The trial court held a dissolution trial on November 16 and December 15, 2020. As identified by the parties in their pre-trial briefs, the issues at trial concerned permanent spousal support, support arrears, and characterization of the parties' marital residence (which had been sold during the pendency of the proceedings pursuant to the court's order) as either community or separate property. In addition, in his pre-trial brief Bevan requested reimbursement of expenses relating to the purchase and sale of the marital

2

residence as well as its rental value during Cheryl's exclusive use of it; half the cost of a custody evaluation; the value of racing bikes purportedly sold by Cheryl; half the value of a loan from Bevan's parents; and various utility and car insurance payments.

Cheryl offered little evidence at trial concerning the Crowdstrike stock options. Although she questioned Bevan about the options, he testified only that he had received "some stock options" from Crowdstrike, those options had "started vesting mid-2017," and he was unable to sell the options before Crowdstrike went public in 2019. Later, after Crowdstrike produced a copy of Bevan's 2016 stock option agreement, Cheryl introduced the document. Bevan then testified that his stock options were "worth nothing" at the time of the parties' separation because Crowdstrike was not yet a public company.

In her post-trial brief, Cheryl argued that the trial court should split the fair market value of any shares for which options had vested by the date of the parties' separation, August 1, 2017. Cheryl also sought permission to subpoena from Crowdstrike "all information necessary to ascertain" the amount of the options vested as of August 1, 2017 and the current value of the stock options.

On February 16, 2021, the trial court issued a tentative statement of decision. The court found that the marital residence was community property and that the down payment for it used $403,796 of Bevan's separate property and $121,204 of community property. The court also considered Cheryl's contention that some of the Crowdstrike stock options were community assets that vested before separation. While Bevan acknowledged that options vested before separation, he argued that they had no value. Finding that Cheryl had not presented any evidence of value at trial, and that she had not "use[d] the power of the court to compel the disclosure of the value before trial," the trial court concluded that Cheryl had "not presented the evidence necessary to prevail on this issue."

The trial court also declared a mistrial on the issue of permanent spousal support and bifurcated that issue for future determination. Although the court resolved a number of other issues, it did not direct how the funds from the sale of the marital residence should be divided or address any of the reimbursement claims raised in Bevan's pre-trial briefs except to state that Bevan failed to establish that the loan from his parents was a community debt and that the parties had presented insufficient evidence to prevail on *Watts* charges or *Epstein* credits.

D.      *The Stipulation Concerning the Marital Residence*

In May 2021, the parties stipulated to, and the court ordered, the release of funds from the sale of the parties' marital residence.

E.      *The Final Statement of Decision*

In July 2021, Cheryl moved to set aside the statement of decision's finding concerning the Crowdstrike options, arguing that her failure to introduce evidence concerning their value at trial was due to Bevan's failure to include in his 2017 disclosure declaration information concerning his stock options. Bevan argued in opposition that Cheryl was aware of the stock options well before trial, and, indeed, Cheryl's trial exhibits contained information concerning the stock options and their value. At a hearing on September 17, 2021, the trial court adopted its tentative statement of decision without modification.

F.      *The Judgment*

On April 11, 2022, the trial court adopted the child custody recommendations made by Family Court Services. Three days later, on April 14, 2022, the court entered a judgment of dissolution, ordering, among other things, division of property pursuant to the statement of decision, which the court attached.

On May 25, 2022, Cheryl filed a timely notice of appeal.

4

## II. DISCUSSION

On appeal, Cheryl argues that the trial court abused its discretion by declining to characterize the Crowdstrike stock options as community property. Before addressing that issue, we consider our jurisdiction over this appeal as well as a procedural objection by Bevan.

### A. *Appellate Jurisdiction*

The judgment of dissolution left one issue, spousal support, for later determination and did not expressly resolve other issues such as the division of the marital residence. However, a final judgment disposing of all issues is not necessary where the collateral order doctrine applies, and the failure to resolve the issue of spousal support does not affect application of the doctrine to the separate issue of division of marital property. In addition, the parties resolved the division of the marital residence before judgment, and the trial court appears to have resolved all other issues concerning division of the property that the parties advanced at trial. As a consequence, we conclude that the trial court's ruling concerning marital property division is appealable under the collateral order doctrine.

Under the collateral order doctrine, an interlocutory order or judgment is appealable despite the absence of a final judgment "when there has been a final determination of a collateral matter which is distinct and severable from the general subject of the litigation." (*In re Marriage of Laursen & Fogarty* (1988) 197 Cal.App.3d 1082, 1086, fn. 4; see also *In re Marriage of Garcia* (2017) 13 Cal.App.5th 1334, 1344.) In marriage dissolution cases, courts have long recognized that "disputes over division of marital property, custody of minor children and spousal support are essentially collateral to the issue of dissolving the marriage." (*In re Marriage of Van Sickle* (1977) 68 Cal.App.3d 728, 756.) Consequently, orders resolving such disputes with finality in a judgment of dissolution are appealable under the collateral order doctrine. (*Id.* at pp. 735-736; see *In re Marriage of Lafkas* (2007) 153 Cal.App.4th 1429, 1433; *In re*

5

*Marriage of Skelley* (1976) 18 Cal.3d 365, 367-369 [finding jurisdiction over appeal from order reducing temporary spousal support]; *In re Marriage of Gruen* (2011) 191 Cal.App.4th 627, 637-638 [finding jurisdiction over appeal from order modifying child support]; *In re Marriage of Nicholson & Sparks* (2002) 104 Cal.App.4th 289, 291, fn. 1 (*Nicholson*) [finding jurisdiction over final judgment dividing community property].)

Here, the April 2022 judgment is appealable under the collateral order doctrine because it finally resolves the division of marital property. Initially, the tentative statement of decision incorporated into the judgment left open several issues. In particular, the statement characterized the parties' marital residence as community property but did not order division of that property. This defect, however, was cured before the judgment was entered. In May 2021, three months after the tentative statement of decision and 11 months before the entry of judgment, the parties entered into a stipulation concerning the division of the proceeds from the sale of the marital home. As a consequence, no further action was required to value or divide that property. (See *Nicholson*, *supra*, 104 Cal.App.4th at p. 291, fn.1 [holding failure of judgment to resolve issues relating to division of property cured by later resolution of all remaining issues].)

Other issues raised prior to the dissolution trial have been abandoned. For example, the parties' schedules listed several assets beyond the marital residence and the Crowdstrike stock options such as bank accounts, household appliances, vehicles, and jewelry without indicating whether they were community or separate property. At trial, however, the parties did not present any evidence concerning these assets. Similarly, while in his trial brief Bevan sought reimbursement for various expenditures as well as the purported sale of some of his personal property, he did not present any evidence at trial concerning these expenditures.[2]

---

[2] Bevan asserted in his post-trial brief that the parties were not provided sufficient time at trial to present certain issues, including reimbursement for post-separation (continued)

6

As a consequence, when this court requested supplemental briefing concerning whether the April 14, 2022 judgment resolved all issues relating to the division of property, Cheryl represented that the trial court had left no issue to be determined later, and Bevan did not contest that representation. At oral argument, the court requested briefing on specific issues raised during the proceedings below. Once again, Cheryl represented that the issues had been resolved, and Bevan did not contest the representation.

Accordingly, we conclude that the April 2022 judgment resolved all the marital property division issues presented to the trial court, and we have jurisdiction over Cheryl's appeal from the judgment under the collateral order doctrine.

B.      *The Appellate Record*

Bevan argues that this appeal should be dismissed because Cheryl failed to provide an adequate appellate record. In particular, Bevan objects that the record does not include transcripts of the trial court proceedings on November 16 and December 15, 2021, transcripts of the hearing to set aside the tentative statement of decision held on September 17, 2021, or the minute order from that hearing. After completion of briefing, however, Cheryl filed motions to augment the record with the September 17, 2021 minute order, as well as the reporter's transcripts of court proceedings held on November 16 and December 15, 2020 (as well as February 10 and 22, 2021), and we granted the motions.

Finally, the reporter's transcript for the September 17, 2021 hearing is not needed. Cheryl's appeal is from the April 2022 dissolution judgment, not the September 17, 2021

community and separate expenses. Although Bevan initially filed objections to the tentative decision's characterization of these issues as having been addressed, he subsequently withdrew those objections and did not file a motion to set aside the statement of decision or resulting judgment. Moreover, neither party's status conference statements filed in the period between trial and issuance of the judgment list reimbursement or property valuation, characterization, or division as further issues for consideration.

7

order denying her motion to set aside the statement of decision, and the transcript of the hearing concerning that order is not needed to resolve the issues raised on appeal. (See, e.g., *Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924, 933 ["While a record of the hearing would have been helpful to understand the trial court's reasoning, it is not necessary here where our review is de novo and the appellate record includes the trial court's written orders and all . . . materials germane to Appellant['s] motion."].)

Because the submissions accompanying Cheryl's motions to augment corrected all material deficiencies in the record presented on appeal, we discern no basis for dismissing the appeal. (See Cal. Rules of Court, rule 8.155(a)(2).)

### C. *The Crowdstrike Stock Options*

We now turn to the merits of the appeal and Chery's challenge to the trial court's failure to characterize the Crowdstrike stock options granted during Bevan's marriage to Cheryl as community property. Typically, courts treat characterization issues as factual and review them under the substantial evidence standard. (*In re Marriage of Brandes* (2015) 239 Cal.App.4th 1461, 1472 (*Brandes*).) However, when the characterization " 'inquiry requires a critical consideration, in a factual context, of legal principles and their underlying values,' the determination" becomes "a mixed question of law and fact that is predominantly one of law" and therefore "is examined de novo." (*In re Marriage of Lehman* (1998) 18 Cal.4th 169, 184; see also *Brandes*, at p. 1472.) We find that the characterization issue presented by this appeal raises a predominantly legal question, and reviewing that question de novo, we conclude the trial court erred in not characterizing the Crowdstrike stock options as partly community property.

Under California law, "[a] spouse's time, skill, and labor are community assets," and any property acquired during marriage "is presumed to be community property." (*In re Marriage of Sivyer-Foley & Foley* (2010) 189 Cal.App.4th 521, 525-526; see also Family Code, § 760 ["Except as otherwise provided by statute, all property . . . acquired by a married person during the marriage while domiciled in this state is community

8

property."].)  Accordingly, even when stock options are not exercisable until after dissolution of the marriage, courts characterize the options as partly community property if they were awarded and vested during marriage and before separation.  (*See*, *e.g.*, *In re Marriage of Harrison* (1986) 179 Cal.App.3d 1216, 1225-1227; *In re Marriage of Nelson* (1986) 177 Cal.App.3d 150, 153-155; *In re Marriage of Hug* (1984) 154 Cal.App.3d 780, 792 (*Hug*).)

Here, the evidence showed that, when Bevan was hired by Crowdstrike in 2016, he was granted stock options with an initial vesting date of May 18, 2017, with additional stock options vesting on a monthly basis thereafter.  As Bevan and Cheryl married in 2009 and did not separate until August 2017, these options were all granted (and vested) during marriage and before separation.  Moreover, Bevan presented no evidence that the stock options were intended to provide compensation solely for services after his separation from Cheryl in August 2017.  As a consequence, it must be presumed that the Crowdstrike stock options were offered for the usual purposes of such options—to attract employees and to provide deferred compensation for present services (*Hug*, *supra*, 154 Cal.App.3d at pp. 785-786)—and therefore should have been characterized as at least partly community property.

The trial court determined that the Crowdstrike stock options were not community property, and Cheryl was not entitled to any share of them, because she did not present any evidence of their value at trial.  While it is true that Cheryl failed to present evidence of the stock options' value at trial, the failure to present evidence concerning the *value* of the Crowdstrike stock options did not justify the trial court's refusal to make an accurate *characterization* of the nature of the options.  Even absent evidence of the options' value, the trial court could have divided them in several different ways (see, e.g., *d'Elia v. d'Elia* (1997) 58 Cal.App.4th 415, 425; *In re Marriage of Brigden* (1978) 80 Cal.App.3d 380, 393-394), including ordering an "in-kind division" of the options while "retaining

9

jurisdiction over the [options] to later implement that division" when the options mature. (*In re Marriage of Gray* (2007) 155 Cal.App.4th 504, 523.)

At oral argument, Bevan asserted that in the statement of decision the trial court characterized the Crowdstrike stock options as community property but awarded the options to him because they had no value. We disagree. The statement of decision did not expressly divide any community property, and we see no reason to interpret it to implicitly divide the Crowdstrike stock options.

We therefore conclude that the trial court erred in characterizing the Crowdstrike stock options as entirely Bevan's separate property and failing to find any part of them community property.

### III.   DISPOSITION

The judgment of dissolution is reversed insofar as it pertains to the Crowdstrike stock options. The matter is remanded with directions to determine the community property share of those options and to make an equitable division of that share. The parties shall bear their own costs on appeal.

_____
BROMBERG, J.

WE CONCUR:

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

_____
WILSON, J.

_Docherty v. Docherty_
H050067